*In re* MARRIAGE OF ARMA RASKI *et al.*—(ARMA L. RASKI, Plaintiff-Appellee, *v.* JOHN A. RASKI, Defendant-Appellant.)

Fifth District   No. 78-72

Opinion filed September 13, 1978.

Mitchell & Armstrong, Ltd., of Marion, for appellant.

Richard E. White, of Murphysboro, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Appellant John A. Raski appeals from the judgment of the Circuit Court of Williamson County dividing marital property and granting child support to appellee Arma L. Raski for the benefit of their minor son following the parties' dissolution of marriage.

John and Arma Raski were married in June 1967. At that time, the parties had little or no property. Through a joint effort, they have accumulated what is stipulated to be marital property under the recently enacted Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*). The major item is the marital home which is valued at or in excess of $37,000. The outstanding balance of the mortgage on the home is roughly $14,000. The contents of the home are marital property and have not been valued. The parties own two automobiles, a

1972 Opel and a 1976 Chevrolet. Mrs. Raski has medical insurance covering herself and the child, and has two small life insurance policies. Mr. Raski also has a medical policy covering himself and the child. In addition he has a $15,000 life insurance policy with Arma as beneficiary. The parties had two savings accounts and one checking account. Although the evidence is somewhat contradictory, it appears that one savings account was in both parties' names, with a balance of either $2,300 or $2,900 at the time the parties separated. The other savings account, although marital property, was in Mrs. Raski's name, and had a balance of $3,100 to $3,400 at the same time. The checking account was in both names and had a balance of about $300.

The parties are school teachers and make roughly equivalent salaries. Mr. Raski makes approximately $16,000 a year and Mrs. Raski earns $15,300 a year. On most occasions they pooled their resources.

One child, Anthony Raski III, who is four years old and in good health, was born of the marriage. After Mr. Raski left the home in February 1976, he voluntarily paid child support of $165 per month. When he stopped paying the support, a temporary order was entered in the amount of $150 a month. Mrs. Raski testified that this sum, in addition to what she made, was hardly sufficient to cover the child's support and maintain herself and the home.

She further testified that after the parties' separation, she withdrew $1,200 from her savings account and $1,100 from the joint savings account. She pooled these funds with her tax refund and purchased E bonds for the benefit of the child. Both Mrs. Raski's and the child's names are on the bonds. She also withdrew additional funds from her savings account to pay expenses when Mr. Raski stopped making child support payments for three to four months. In addition, she used the balance of the funds in the joint checking account for purposes undisclosed in the record.

Mr. Raski testified that his wife had taken $1,920 from the joint savings account after the marriage separation. He withdrew the remaining balance of $1,100.

Mrs. Raski continues to make the mortgage payments and the routine house repairs.

The trial court ordered Mr. Raski to pay child support of $165 per month. In addition, it awarded him the 1976 Chevrolet, work tools, hunting equipment, an antique desk, and a baby bed. Mrs. Raski was awarded the 1972 Opel, the remaining home furnishings, and an undivided one-half interest in the marital home. Appellant's one-half interest was to be conveyed in trust for the minor child until said child reached the age of 18 years, at which time the corpus was to pass outright to the child. The trial court then awarded each party "his or her own bank accounts."

On appeal, appellant assigns as error the child support award of $165 per month. He further challenges the conveyance of his interest in real estate in trust for the benefit of his son and the purchase of the E Bonds out of marital property also for the son's benefit. Lastly, appellant asserts that the trial court failed to divide equitably the marital property bank accounts.

It is firmly established in Illinois that the amount of child support lies within the sound discretion of the trial court and will not be set aside unless contrary to the manifest weight of the evidence. (*Riordan v. Riordan*, 47 Ill. App. 3d 1019, 365 N.E.2d 492 (1st Dist. 1977); *Elizer v. Elizer*, 36 Ill. App. 3d 552, 344 N.E.2d 493 (5th Dist. 1976); *Knox v. Knox*, 31 Ill. App. 3d 816, 334 N.E.2d 891 (1st Dist. 1975).) The enactment of the new Illinois Marriage and Dissolution of Marriage Act does not reduce the need for proper trial court discretion. Section 505, entitled "Child Support," states:

"[T]he court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct, after considering all relevant factors, including:
* * *

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;
* * *

(5) the financial resources and needs of the noncustodial parent or parents." Ill. Rev. Stat. 1977, ch. 40, par. 505.

■■ Clearly, the trial court has wide discretion to insure that the needs of the minor child are met. Applying these principles, we cannot conclude that the trial court abused its discretion in awarding child support payments of $165 per month. We agree with appellant that the income and assets of both husband and wife should be considered in setting the amount of a child support award. (See *Riordan v. Riordan*, 47 Ill. App. 3d 1019, 1024-25, 365 N.E.2d 492, 497.) Appellant is incorrect, however, in asserting that he is bearing the entire cost of the child's support. Mrs. Raski, in addition to supporting her son, must maintain herself and the home. She testified that even with the $150 per month support payments she was still having trouble meeting the child's financial needs. Appellant simply fails to consider all the necessary expenses such as food, clothing, shelter and medicine in raising a child. We, therefore, have difficulty interpreting the decree as placing the entire burden on the father. Furthermore, there is absolutely no question of appellant's ability to afford the periodic payments. In light of the above, the amount of the child support payment is not excessive.

We next consider the propriety of the order requiring appellant to convey his interest in the marital home in trust for his minor son. In Illinois, the parents' liability for child support continues during the child's minority, and terminates when the child reaches majority. (*Prenzler v. Prenzler*, 55 Ill. App. 3d 244, 370 N.E.2d 642 (3d Dist. 1977); *Strum v. Strum*, 22 Ill. App. 3d 147, 317 N.E.2d 59 (4th Dist. 1974).) Although certain statutory exceptions to the common law rule exist, for instance, the support of the mentally or physically disabled and support for education expenses (Ill. Rev. Stat. 1977, ch. 40, par. 513), none are relevant to our inquiry here. The provisions of the new Illinois Marriage and Dissolution of Marriage Act pertaining to child support do not extend the parents' obligation beyond minority except in those limited situations enumerated above. In section 505 of the Act, the court may order the "parents *owing a duty of support* to a child of the marriage to pay an amount reasonable and necessary for his support." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 40, par. 505.) Section 503(d) provides:

"The court may protect and promote the best interests of the child by setting aside a portion of the jointly or separately held estates of the parties in a separate fund or trust *for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 40, par. 503(d).

■■ The one reasonable interpretation of these statutory provisions is that the parents' obligations of support extend only to the duration of a child's dependency. The "duty of support" in section 505 clearly does not modify the existing common law and statutory rules regarding the age at which child support terminates. In section 503(d), the creation of a trust fund is expressly conditioned upon the trust benefiting a "minor, dependent or incompetent child." The construction the trial court gave these provisions as authorizing an outright conveyance of marital property in trust for a minor son, unrelated to his support or maintenance, was clearly in error. We have no objection to the creation of a trust as part of the dissolution decree so long as it conforms to the requirements of section 503(d). We would, however, question the practice of establishing a trust consisting of non-income-producing property, such as a marital home, when the spouses have the financial ability and willingness to support a minor child through direct payments. The trial court, therefore, upon remand must consider whether a trust fund is necessary to "protect and promote the best interests of the child" as required by section 503(d).

While we find no Illinois cases determinative of this issue, other jurisdictions have considered this precise point. In *Sutherland v. Sutherland*, 77 Wash. 2d 6, 459 P.2d 397 (1969), the trial court, as part of the divorce decree, directed the husband to pay $50,000 to a bank, as

trustee, or to purchase equivalent annuities for his five minor children. Income on the funds was to be paid to the husband. The corpus of the trust was to be distributed to the respective child upon his or her graduation from high school or attainment of age eighteen, whichever occurred first. The Washington Supreme Court struck down this trust provision, stating that "[t]he trust device cannot be used as a conduit for the distribution of a father's separate estate to his children, unrelated to his obligation to them for support and education." (*Sutherland v. Sutherland*, 77 Wash. 2d 6, 10, 459 P.2d 397, 399 (1969).) The decision in *Sutherland* was based on a Washington statute, Wash. Rev. Code §26.08.110, which authorized the court to dispose of the parties' property "as shall appear just and equitable \* \* \* for the custody, support and education of the minor children of such marriage \* \* \*." Although the Illinois and Washington statutes differ, the similarity of the language would suggest that child support is limited to the time of dependency.

In *Farley v. Farley*, 227 Cal. App. 2d 1, 38 Cal. Rptr. 357 (1964), *cert. denied*, 379 U.S. 945, 13 L. Ed. 2d 543, 85 S. Ct. 438 (1964), a California case construing Utah law, the court invalidated a provision in a Utah divorce decree establishing a trust fund for the support of the minor children with the corpus to be distributed when the youngest child attained or would have attained 18 years of age. The court concluded that there was no authority for the proposition that a husband was ultimately required to convey property *inter vivos* to adult children as part of a divorce decree. *Farley v. Farley*, 227 Cal. App. 2d 1, 7, 38 Cal. Rptr. 357, 362 (1964).

Comparable court decisions of other jurisdictions, while not determinative of issues before an Illinois court, are persuasive authority and entitled to respect. (*Cooper v. Hinrichs*, 10 Ill. 2d 269, 140 N.E.2d 293 (1957); *Atwood Vacuum Machine Co. v. Continental Casualty Co.*, 107 Ill. App. 2d 248, 246 N.E.2d 882 (1st Dist. 1969).) In light of the persuasive authority cited above and our analysis of sections 503(d) and 505 of the new Marriage and Dissolution of Marriage Act, we hold that the trust is invalid.

● 3 Likewise, the E Bonds purchased from marital property for the benefit of the child contain the same infirmities as the trust. We find absolutely no requirement that the bonds are to be used for support of the minor child. Accordingly, the gift to the child from the parties' savings accounts was improper.

The last issue before the court is whether the trial court properly divided the marital property bank accounts between the respective parties. While we are somewhat confused by the trial court's order "[t]hat each party is awarded his or her own bank accounts" because two of the three accounts were jointly held, we need not address the issue here.

Upon remand, the trial court must first consider the sufficiency of the child support award in light of the criteria set forth in section 505. If the award is inadequate, the trial court can make an appropriate adjustment. Thereafter the trial court must devise an equitable solution to the distribution of the E Bonds, appellant's interest in the marital home, and other marital property in accordance with the provisions of the Act. It would, therefore, be inappropriate for us to consider the division of the bank accounts, when the trial court must consider the overall situation in dividing "the marital property without regard to marital misconduct in just proportions * * *" (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), while providing for adequate support of the minor child. By necessity, the other property awards in the dissolution decree, although not challenged on appeal, are not to be insulated from modification if the trial court, in its sound discretion, believes changes would promote a just distribution of the marital property.

The judgment of the Circuit Court of Williamson County is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.