*In re* MARRIAGE OF ALMA REYNA, Petitioner-Appellee, and PABLO REYNA, Respondent-Appellant.

Third District   No. 79-307

Opinion filed December 18, 1979.

James N. De Wulf, of Moline, for appellant.

Dorothea O'Dean and Franklin S. Wallace, both of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Respondent Pablo Reyna appeals from the judgment of the Circuit

Court of Rock Island County, entered in the divorce action filed by Alma Reyna, as the judgment relates to child support and maintenance. The parties, by stipulation, had settled all matters in the divorce proceeding other than the questions of maintenance and child support, which were submitted to the trial court for determination. After considering the evidence of the parties' housing and related situations, needs, obligations, financial status, and past history, the circuit court entered a temporary award for maintenance and support of approximately $556. It also specified a permanent award, conditioned upon the sale of two parcels of real estate by Pablo Reyna. The permanent award was approximately $700 monthly, being $35 per week maintenance for Alma Reyna and $35 per week child support for each of the couple's four children, all of whom remained in the custody of their mother. From the judgment making these awards, Pablo Reyna appeals. He argues that the award of maintenance was not justified by his former wife's situation and that she ought to obtain employment. He also argues that the child-support and maintenance awards are excessive and unduly burdensome. The third issue raised concerns whether the court considered the relevant factors in entering its awards and whether the court was required to set forth its findings.

The pertinent parts of the record on appeal indicate that the parties were married in 1967 and had four children during the marriage, all daughters and aged 11, 10, 8 and 1½, respectively, at the time of the divorce action. The Reynas had separated in August 1978, and Mrs. Reyna filed for a divorce in November 1978. According to the terms of the stipulation and the order of the circuit court, Mrs. Reyna was to retain the care and custody of the four children. She rents an apartment for herself and the girls at a cost of $200 per month, with her utilities, including gas, lights, and phone, costing about $56 monthly. She spends approximately $240 per month on food for the family and $90 monthly on clothing. Gasoline costs her approximately $80 monthly. Her monthly expense total, outside of any incidentals, comes to approximately $666. She also receives food stamps. Mrs. Reyna is not employed and has not been since the separation of the parties. She stated that she quit work because, when she and her husband separated, he was no longer available for babysitting and she had to assume full-time domestic duties. Previously, she had worked at three different jobs during 1978, earning a total of $1,904. By the terms of the separation agreement, she received the couple's household goods and furnishings and their 1974 station wagon. The only real estate they had acquired, two lots valued at $5,000, was retained by Pablo Reyna to be sold, with the proceeds to be applied toward the couple's debts, totaling near $8,000.

The evidence as to Mr. Reyna's situation indicated that he was

employed as a police officer for the city of Moline, earning a basic salary of $1,328 monthly, with take-home pay of approximately $740. It was also established that in 1978, in addition to the approximately $16,100 regular salary from the city, he also had income of nearly $8,000 from work in construction in the area. His testimony concerning that income was that further construction work was uncertain and potentially conflicting with his police duties. Also brought forth in the record, is the fact that in the first quarter of 1979, Mr. Reyna earned $5,386.59 from his employment with the city (the excess above basic salary came from overtime duty). If such earnings were to continue, his yearly income from the city would amount to over $21,500. Mr. Reyna testified that additional overtime was also uncertain to continue.

Mr. Reyna established debts in the total amount of approximately $8,500, requiring monthly payments of $266, $210 of which was deducted from his check by the credit union. By stipulation and order of the court, much of this debt, possibly $6,000, would be satisfied from the sale of the two lots owned by the Reynas. Mr. Reyna placed a value of at least $5,000 on this real estate. Pablo Reyna's monthly expenses included $150 for rent, $83 for utilities, $240 for food (at $8 per day), and $73 for laundry and cleaning. This totals $546 monthly, and if a $56 monthly debt payment is included, the total becomes $612 monthly.

After examining and considering the above evidence as to the parties' situations, the circuit court entered a temporary maintenance and custody award of approximately $550. This included $200 for Mrs. Reyna and the children's rent, $50 for their utilities, and $300 ($75 per week for all the children) for support. Mrs. Reyna testified that she would have difficulty getting by on that award. The court also set a permanent award for maintenance and child support. It ordered Pablo Reyna to pay $35 per week per child in support, totaling approximately $560 monthly, and $35 per week maintenance, totaling approximately $140 monthly. The total maintenance and support obligations placed upon Mr. Reyna under the terms of the permanent award would be slightly over $700 monthly. The permanent award would not take effect, the court ordered, until the lots had been sold and Mr. Reyna was thus relieved of a major portion of his debts and the monthly payment they required. Mr. Reyna appeals from the awards, arguing that no maintenance at all ought to have been given his wife and that the maintenance and support awards were excessive, making it impossible for him to live on the moneys left over after paying those obligations.

The applicable provisions of the Illinois Marriage and Dissolution of Marriage Act (hereinafter Divorce Act) are sections 504 and 505. Section 504 provides:

"(a) In a proceeding for dissolution of marriage or legal separation

or declaration of invalidity of marriage, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse, only if it finds that the spouse seeking maintenance:

(1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and

(2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home, or

(3) is otherwise without sufficient income.

(b) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after consideration of all relevant factors, including:

(1) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) the standard of living established during the marriage;

(4) the duration of the marriage;

(5) the age and the physical and emotional condition of both parties; and

(6) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Ill. Rev. Stat. 1977, ch. 40, par. 504.)

Section 505 states:

"In a proceeding for dissolution of marriage or legal separation or declaration of invalidity of marriage, or a proceeding for child support following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct, after considering all relevant factors, including:

(1) the financial resources of the child;

(2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved;

(4) the physical and emotional condition of the child, and his educational needs; and

(5) the financial resources and needs of the noncustodial parent or parents." Ill. Rev. Stat. 1977, ch. 40, par. 505.

While the new Divorce Act has more precisely focused the considerations which must be addressed before maintenance and child support will appropriately be awarded, the rule of law governing such decisions is one which places discretion, within statutory limits, with the trial court. Thus, the necessity for and the amount of an award, both as to maintenance and child support, are decisions within the sound discretion of the trial court in each individual case, and those decisions will not be set aside unless found to be contrary to the manifest weight of the evidence, thus showing an abuse of discretion. *In re Marriage of Marsh* (1978), 64 Ill. App. 3d 572, 381 N.E.2d 804; *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744; *Lewanski v. Lewanski* (1978), 59 Ill. App. 3d 805, 375 N.E.2d 961; *Steen v. Steen* (1978), 65 Ill. App. 3d 860, 382 N.E.2d 1285.

In the instant case, as to the amounts of the awards, counsel for Mr. Reyna argues that the trial court did not take into consideration Pablo Reyna's financial resources and financial condition when making the award to his wife and children. Counsel argues that even granting that the sale of the lots eliminates his $210 payment to the credit union, he would only be receiving $948 per month in salary. If the $700 for maintenance and child support is deducted, it leaves him only $250 from which to meet his own expenses, totaling in themselves almost $600. According to counsel for Mr. Reyna, it will be impossible for him to pay the court's permanent award and still maintain even a minimal level of existence for himself.

■■ The problem with the argument presented lies in its omission of facts as to income which were established in the record. According to his counsel, Mr. Reyna makes an annual total of only slightly above $16,000 from his employment with the city of Moline. It is on the basis of these salary figures that the $948 monthly figure is calculated by counsel. Yet, the evidence presented to the circuit court indicated that in addition to the $16,000 from the city, Mr. Reyna also earned over $8,000 working construction in 1978. His annual income for 1978 was thus over $24,000. The evidence also indicated that in the first quarter of 1979, Mr. Reyna's city income was $5,386, which, if it were to continue, would give him an annual income of $21,546. While it may be true, as Mr. Reyna indicated, that such income is uncertain to continue, the fact of its existence in the past is something which the court properly took into consideration. If those sources of income do not continue to be available in the future, then Mr. Reyna, as the court below noted, may seek a modification of his

maintenance and support obligations. When those sources of income are considered, and Mr. Reyna's total income is properly viewed at somewhere between $21,000 and $24,000 (projected for 1979 and established for 1978, respectively) and not as at $16,000, then it must be concluded that the financial resources available to him are capable of sustaining the support and maintenance of his former wife and his four daughters as well as maintaining his own sustenance. We find no abuse of discretion in the amounts of maintenance and child support awarded by the circuit court in this case. (*Steen v. Steen* (1978), 65 Ill. App. 3d 860, 382 N.E.2d 1285.) A review of the record establishes that the courts' awards were based upon consideration of all relevant factors.

■ Similarly, we are unable to find any abuse of discretion in the circuit court's award of maintenance to Alma Reyna. Mr. Reyna's counsel argues that Mrs. Reyna is capable of working and supporting herself somewhat, and he argues that she ought to be made to seek employment. We cannot agree. The record establishes clearly that Mrs. Reyna lacks sufficient property, even including her 1974 station wagon and the household goods, to provide for her reasonable needs. (Ill. Rev. Stat. 1977, ch. 40, par. 504(a)(1).) She has no income and no assets (other than an auto and furniture) with which to pay the bills. In addition, the record shows that through employment in 1978 she was able to earn only $1,904 from three employers. It is obvious that she was earning only minimal wages. Regardless, however, of whether similar employment would allow Mrs. Reyna to support herself (Ill. Rev. Stat. 1977, ch. 40, par. 504(a)(2)), the record, in disclosing that Mrs. Reyna has four daughters to take care of, including a two-year-old, establishes circumstances which make it appropriate for her not to be required to seek employment outside the home. (Ill. Rev. Stat. 1977, ch. 40, par. 504(a)(2).) We note that she testified that she was able to work because her husband was available to baby-sit. When they separated, and she was needed at home, she quit her job. In short, we conclude that the record supports the propriety of an award of maintenance to Mrs. Reyna, and that the $35 weekly awarded by the court was not excessive.

A final issue raised by counsel for Mr. Reyna concerns the need for explicit findings by the trial court when entering awards for maintenance. It is argued that section 504 and 505 of the Divorce Act require that the relevant factors set forth in those sections be considered by the trial court. Counsel then notes that neither the opinion by the trial court nor the judgment order contain any findings with respect to the required considerations. Counsel concludes, from the lack of explicit findings, that the court failed to consider Mr. Reyna's ability to pay and his needs (Ill. Rev. Stat. 1977, ch. 40, pars. 504(b)(6), 505(5)) when it made its awards.

From the record in this case, it is apparent that Mr. Reyna's situation

was clearly noted by the trial court. It is apparent from the transcript of the proceedings and from the evidence in the record that the trial court was conversant with the financial information and situation of both parties, as presented by counsel for both parties at the trial level. There is no indication that any pertinent matter escaped the court's attention and consideration. Given the manifest basis for the awards established in the record, it would serve no useful purpose to remand to the circuit court for a statement of the factors he considered in entering his order.

While the appellant has failed to cite any case law authority for his last contention, and while he only partially advances the argument, we believe that it would be appropriate for us to comment on the question of the necessity of written findings by the trial court under sections 504 and 505, in light of the recent Illinois Supreme Court case of *In re Custody of Harne* (1979), 77 Ill. 2d 414. In that case the court determined that section 610(b) of the Divorce Act, the section setting forth the requirements which must be met in order to modify custody, required the trial courts to make explicit findings that either subsections (1), (2), or (3) of that section is applicable, prior to modifying a custody judgment. (77 Ill. 2d 414, 420.) The basis for the requirement of explicit findings prior to custody modifications was the underlying policy of the new Divorce Act as it pertained to such modifications. The court stated:

> "We believe that section 610(b) of the Illinois Marriage and Dissolution of Marriage Act, like section 409(b) of the uniform act, reflects an underlying policy favoring the finality of child-custody judgments, and making their modification more difficult. The policy evident in the commissioners' notes is also apparent in the provision of section 610(a) that '[n]o motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.' (Ill. Rev. Stat. 1977, ch. 40, par. 610(a).) The aversion to custody changes is further manifested by the requirement in section 610(b) * * *. By creating a presumption in favor of the present custodian, the legislature has sought to promote a stability and continuity in the child's custodial and environmental relationships which is not to be lightly overturned.
>
> In view of these provisions, we do not believe that the legislature intended to allow modification of child-custody judgments without a finding by the trial court that one of the statutory prerequisites existed. * * *" 77 Ill. 2d 414, 420-21.

The court went on to note, in that opinion, that requiring such findings would also aid reviewing courts when custody matters were appealed,

for "absent such a judicial finding, a court of review would be unable to determine the basis for a modification order and would be left to speculate on the grounds relied upon by the trial judge." 77 Ill. 2d 414, 421.

■■■ Unlike the question of custody modification in 610(b) and the Act as a whole, wherein the supreme court noted a legislative aversion to such changes unless evidence established certain conditions, neither section 504, though it sets forth prerequisites to maintenance, nor the Act as a whole indicates a similar aversion or strong underlying policy against maintenance awards. Thus the principal support for requiring findings under section 610(b) is not present with section 504. Also, as in the present case and in most cases, there will be little difficulty for reviewing courts in ascertaining the basis upon which the trial court entered an award of maintenance. In the present case, as noted, the evidence clearly establishes that Mrs. Reyna's situation is governed by subsections (1) and (2) of section 504(a). Even if it would be determined that section 504 requires explicit findings of the nature required in the *Harne* case with respect to section 610(b), we perceive no useful purpose in remanding for such findings in the instant case, where the record makes manifest the basis for the award.

As to any necessity of findings under section 505, the child support provision, nothing therein requires findings by the trial court in entering its order of support. That section requires consideration of all relevant factors: it does not specifically require the court to set forth in explicit findings the factors it considered. We would point out that we do not, by these comments and conclusions, mean to suggest or indicate that trial courts ought not make such written findings in their opinions and orders. On the contrary, as noted in *Harne*, inclusion of such findings can be helpful to reviewing courts. Our comments to the effect that explicit findings are not specifically required under sections 504 and 505 is not meant, in any way, to encourage trial courts not to make such findings in their opinions and orders.

For the reasons herein expressed, the judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.