*In re* MARRIAGE OF BETTE A. AMATO, Petitioner-Appellant, and JOSEPH AMATO, Respondent-Appellee.

Second District   No. 79-89

Opinion filed January 21, 1980.

H. Joseph Gitlin, of Woodstock, for appellant.

Paul J. Collins, of Waukegan, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Bette A. Amato (the wife) appeals from the portion of the judgment entered November 6, 1978, dissolving her marriage to Joseph Amato (the husband), relating to the disposition of property, the failure to award maintenance or adequate child support and the order of visitation.

The parties were married in 1962 and had three children, James, Thomas and Angele, whose ages at time of trial were 16, 14 and 13,

respectively. The wife at time of trial was 44 and the husband 70 years of age.

The petition for dissolution was filed on June 6, 1978, and was uncontested as to the grounds for dissolution. The issues on appeal concern the division of property and the questions of maintenance and child support. The parties are in substantial agreement as to the value and extent of the following marital and nonmarital assets:

| | |
|---|---:|
| Harvard Race Track Property consisting of approximately 19 acres | $ 85,500 |
| Two residential lots in Woodstock ("Big Foot") | 15,000 |
| 28 acres in the city of Woodstock | 560,000 |
| 80 acre farm property and buildings in Harvard | 200,000 |
| Residence of the parties in Barrington | 328,000 |
| Various shares of corporate stock | 3,500 |

The court found that the Big Foot lots and the 28 acres in Woodstock were nonmarital property of the husband. It further found that the Harvard farm and Race Track were marital property and ordered them sold, with the proceeds to be divided equally between the parties. The court also found that the Barrington residence was the husband's nonmarital property but that Bette and the children could reside there until Angele reaches age 22. It was further provided that if the husband dies before Angele reaches that age the residence would be sold and the proceeds placed in trust, the income to be used for the support and education of the children, the corpus to be distributed to the children equally when Angele reaches 22. The court ordered the husband to pay the real estate taxes and fire insurance on the property while he ordered the wife to pay for maintenance and utilities.

Another asset of the parties was the McHenry County Tobacco Company, which was operated as a family business and provided much of the family income. In 1975, the husband conveyed the business to the wife apparently as an accounting procedure to allow the husband to receive social security. The wife testified that she paid the husband the stated consideration of $37,925 but that this was nearly all used for family expenses. In 1978 the wife sold the business for $60,000, receiving a $10,000 down payment with the balance payable in 5 years in monthly payments of $908.30. She testified that she had run the business since 1968; but the husband testified that he managed it and drew $300 in weekly salary from it until 1976. The court found that the proceeds of the McHenry County Tobacco Company was separate property of the wife.

Other assets included three automobiles, jewelry, extensive household furnishings, two horses, snowmobiles and various personal items. The wife also testified that she took $16,000 in cash from a joint safety deposit box in August 1976, which was used for family expenses.

The wife testified to the family living expenses which totaled $84,000 a year. She received $336 a month from the husband's social security in addition to the monthly payments from the sale of the Tobacco Company.

The husband testified that he receives $388.40 per month as social security, and that his only other income is the $700 per month from rental of the race track and farm. He did not estimate his total living expenses although he testified as to certain regular expenses.

In summary, following the court order it appears that the wife will have approximately $130,000 in cash, being one-half of the net proceeds of the sale of the property designated as marital, some jewelry and a 1977 Ford station wagon. She and the children will have a rent-free residence, with taxes and insurance paid, but she must maintain the premises and pay utilities. The husband under the decree retains real estate valued at $575,000 in addition to the $130,000 in sale of proceeds. In addition, under the decree he must pay the attorney fees to the wife's attorney in the amount of $5,000, taxes and insurance on the Barrington home as noted, the educational expenses of the children and their medical and dental expenses above $50 per episode. The husband was also given the right to approve the college which his children attend and was granted visitation rights.

The wife's primary argument is that, aside from the resolution of the question of which assets are marital and which nonmarital, the court can make adequate provision for the support of the wife and the children and did not do so. Alternatively she contends that the court erred in finding that the Barrington residence was nonmarital property of the husband.

Under the statutory scheme of the Illinois Marriage and Dissolution of Marriage Act (see Ill. Rev. Stat. 1977, ch. 40, pars. 503, 504), we must reach the question of the disposition of the assets of the parties before deciding on the question of maintenance, since the issues of maintenance and child support relate directly to the final property disposition. Under section 504, the court is to award maintenance only if the spouse seeking it lacks sufficient property and is unable to support herself. Referencing similar provisions under the Uniform Marriage and Divorce Act, the Commissioners' Comments to section 308 state:

> "The dual intention * * * is to encourage the court to provide for the financial needs of the spouses by property disposition rather than by an award of maintenance. Only if the available property is insufficient for the purpose and if the spouse who seeks

maintenance is unable to secure employment appropriate to his skills and interests or is occupied with child care may an award of maintenance be ordered." (9A Unif. Laws Annot. 161 (1979).) Child support is, in turn, partially predicated upon the adequacy of the financial resources of the custodial parent. Ill. Rev. Stat. 1977, ch. 40, par. 505(2).

We therefore first consider whether the court erred in finding that the Barrington home was the nonmarital property of the husband. The title to that property was in a land trust in which the husband was the sole beneficiary and had complete power of direction including the right to designate his survivor in interest. He testified that he purchased the lots upon which the home was constructed in 1969 for $12,500, using part of the proceeds from the sale of land which he had owned prior to the marriage in Tucson, Arizona, and in Fox River Grove, Illinois. He said that he had spent some $145,000 to $150,000 in construction costs. A $30,000 mortgage was placed on the property, and there is no evidence that it was repaid from other than family funds. The wife testified that the initial cost was approximately $90,000 and related that she had general supervision over the construction and did some of the work herself.

Section 503(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(b)) sets forth the basic presumption that property acquired after marriage is marital property. The presumption can be overcome by the party claiming the property as his nonmarital property by showing that it was obtained from sources listed in section 503(a), one of which is "property acquired in exchange for property acquired before the marriage * * *". (See Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2).) The party claiming that the property is nonmarital has the burden of proof. *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858.

The appellate courts of the State are split on the question of whether commingling of nonmarital property with marital property transmutes the nonmarital property into marital property. The Fourth and Fifth Districts have held that nonmarital property does not become marital property by virtue of being invested along with marital funds in a single asset. (*In re Marriage of Key* (1979), 71 Ill. App. 3d 722; *In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029.) However, the First District Appellate Court and this court have determined that commingling evidences an intent to treat the property as marital. *Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 517; *Smith*, 77 Ill. App. 3d 858, 865.

■■ We have carefully considered the merits of the competing rules and adhere to our decision in *Smith*. Adoption of the alternative approach would often result in complex financial determinations, as noted in *Klingberg*. The contribution by one party of nonmarital property toward

acquisition of a marital asset can be taken into account in making an equitable division of the marital estate. Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1).

■ The husband has failed to overcome the presumption of section 503(b), since he has not shown that the Barrington home was acquired "in exchange for property acquired before the marriage." (Ill. Rev. Stat. 1977, ch. 40, par. 503(a)(2).) He claimed in his testimony that some $87,000 of nonmarital property went into the construction of a home which he testified cost some $145,000 to $150,000 to construct. Although the construction cost was disputed by the wife, it is clear that the balance of the funds was not shown to have come from nonmarital sources. In addition, there is no evidence that even the funds which the husband sought to trace from property owned by him before the marriage were kept separate and distinct and solely used for the Barrington residence. With respect to some of these funds the husband stated "all that money was contributed to the building of the house, *one way or another.*" (Emphasis added.) The husband in effect commingled his nonmarital assets with marital assets in the construction of the home. We therefore conclude that the court erred in ruling that the Barrington home was nonmarital property of the husband under this record.

From our review of the entire record we conclude that the judgment must be reversed and the cause remanded to the trial court for further proceedings. To assist the court on remand we will comment on various other contentions of the parties relating to the division of property and the award of maintenance.

■ The trial court in dividing the Barrington property and other marital assets of the parties "in just proportions considering all relevant factors" as required by section 503(c) of the Act should make definite findings or in any event make clear from the record the relevant factors it considers in making the division. (See, *e.g., In re Marriage of Capener* (Mont. 1978), 582 P.2d 326; *In re Marriage of Wildin* (Colo. App. 1977), 563 P.2d 384.) Of course, among the factors the court will consider here is the contribution of the husband in the acquisition of the land and the construction and maintenance of the home which he is able to show are from nonmarital funds; as well as the wife's contributions or the contribution from family funds. Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1).

Moreover, the trial court did not find whether the McHenry Tobacco Company was or was not marital property. From the record before us it would appear that it may have been and that it should be considered in dividing the marital assets. Further, the husband has argued that the Harvard Race Track was nonmarital property and that the trial court compromised in dividing marital and nonmarital property when it concluded that the property was marital and divided it 50-50. On remand

the court should reexamine whether the race track is nonmarital property, in accordance with section 503(a).

The court also will consider as other relevant factors the value of the property set apart to each spouse (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(2)); the custodial provisions for the children (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(8)); the fact that the parties were married for 16 years (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(3)); whether the wife dissipated assets in selling the family business (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1)); and the earning capabilities of the wife (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(7)).

Due to the interrelatedness of the issues of property division with maintenance, the sizable impact of the characterization of the Barrington home as nonmarital, and the characterization and distribution of the other disputed assets, we direct on remand that the trial court shall:

1. Find that the Barrington residence is marital property;

2. Determine whether any McHenry Tobacco Company proceeds are marital property;

3. Determine whether the Harvard Race Track property is marital property; and

4. Divide the marital property in light of the statutory factors, making findings as to the dissipation and contribution of the respective spouses under section 503(c)(1) of the Act and the employability of the wife under section 503(c)(7).

If, on remand, and after the division of property it should appear that the resources available to the wife and children are inadequate for their reasonable support, the court should consider setting up a trust for the support of the children from the husband's total assets in the light of his advanced age, relatively low income and large property holdings. (Ill. Rev. Stat. 1977, ch. 40, par. 503(d).) The court would, of course, in the exercise of its discretion be empowered to award maintenance if the circumstances warrant.

In addition to the matters of property maintenance the wife has contended that the visitation privileges awarded to the husband were improper. We cannot agree. Visitation orders will not be disturbed on appeal absent a grave abuse of discretion. (*Rodely v. Rodely* (1963), 28 Ill. 2d 347, 350.) We find no abuse of discretion and therefore affirm that portion of the judgment of the trial court.

Affirmed in part, reversed in part and remanded.

WOODWARD and NASH, JJ., concur.