*In re* MARRIAGE OF CHRISTINE DULYN, Petitioner-Appellee, and GREGOR DULYN, Respondent-Appellant.

First District (1st Division) No. 79-238

Opinion filed September 29, 1980.

Cirricione, Block, Krockey & Cernugel, P. C., of Joliet (Winston J. Block, of counsel), for appellant.

Schiller & Schiller, Ltd., of Chicago (Donald C. Schiller and Stephen A. Schiller, of counsel), for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Gregor Dulyn (hereinafter respondent) appeals from the entry of a supplemental judgment by the circuit court of Cook County on October

31, 1978, apportioning the parties' marital property, awarding maintenance, child support, attorney's fees, and establishing the parties' minor child as the irrevocable beneficiary of an insurance policy to be maintained by the respondent on his life until the minor child reaches majority or until he completes his college education. No appeal has been taken from the entry of the original judgment in this cause which granted the dissolution of the marriage and established custody and visitation rights. It is urged on appeal that the trial court erred: (1) in awarding $600 per month as child support, requiring respondent to pay one-half of the minor child's private school tuition, and requiring respondent to maintain his life insurance for the minor child; (2) in awarding Christine Dulyn (hereinafter petitioner) $4,000 in satisfaction of all claims in the parties' marital property and maintenance; and (3) in awarding petitioner's attorney $5,000 in fees.

Affirmed in part, and reversed in part.

The respondent filed a complaint for divorce on August 16, 1976, against petitioner from whom he had been separated for six years on the basis of desertion. Petitioner generally denied respondent's allegations and filed a counterclaim for divorce, also alleging desertion. Temporary unallocated child support and maintenance was awarded to petitioner in the amount of $600 per month. Thereafter, a vast number of motions were filed alleging the contemptuous or otherwise improper conduct of one or the other party. On June 2, 1978, after an uncontested hearing, the trial court granted a dissolution of the parties' marriage on the petitioner's counterclaim. That judgment incorporated an agreement reached between the parties as to child custody and visitation.

The record discloses the following undisputed facts. At the time of the judgment the petitioner was 40 years old and the respondent was 55. The couple was married on December 28, 1968, in New Jersey and resided in Illinois until their separation 13 months later. After their separation, the respondent continued his residence in Illinois while the petitioner returned to New Jersey with the parties' minor child and took up residence with her mother. The respondent, who is a physician in Joliet, Illinois, listed assets which included: a house in Joliet owned in joint tenancy with his mother, where he, his mother, and a niece live; a small frame house which is used as an office; a one-sixth interest in land in Yuma City, Arizona; and a two-year-old Lincoln Continental, on which he owed $3,300. The petitioner, who has a high school education but no special skills, worked as a bank teller for seven to eight years prior to her marriage but has not worked since then. Her only income since the separation has been the $100 per month unallocated alimony and child support she received from respondent. She did not pay income tax on this amount because she did not think that she had to. Petitioner's assets included a

four-year-old Pontiac Lemans on which she still owed $1,800 and a savings account with a balance of $5-$10. A two-year-old car owned by petitioner and left with respondent at the time of their separation was a total loss in an accident by respondent. Petitioner has outstanding loans in the amount of approximately $10,000 on money she borrowed from an aunt and an uncle for living expenses. She also owes her mother for room and board.

The testimony of the parties in the contested hearing regarding maintenance, child support, and property rights conflicted in several particulars. The respondent's testimony was also impeached in several respects and uncorroborated in others. Petitioner refuted the testimony of respondent that his father bought the house that he and his mother now own. According to her testimony, respondent told her that he had bought the house for his parents and paid all expenses associated with it, including taxes, because his parents didn't have any money. It was also disclosed that shortly before the trial the respondent sold an interest he owned in some Arizona apartments. He testified that he borrowed $12,000 from his mother to purchase the interest and that he turned over the $12,000 he obtained when he sold the interest to his mother to repay her. He did not know where she had gotten the money to loan him in that she had not worked for a number of years. No note or other evidence of the debt was executed. The respondent's testimony in this regard was impeached by reference to his deposition testimony where he stated that the funds which he used to purchase the apartments came out of earnings from his practice. The record also shows that the respondent withdrew $10,700 from a savings account shortly after filing this action. At the trial the respondent explained that the withdrawal was made to repay loans deposited a little at a time into the account. This testimony, however, contradicted his deposition testimony which stated that the money in this account came from earnings from his practice.

The respondent also testified that he suffered from angina pectoris, a heart condition, for which he was under the care and treatment of a physician. On cross-examination, respondent admitted that he had never been hospitalized for this condition. Furthermore, the testimony concerning the respondent's health was uncorroborated. It was maintained that the state of the respondent's health explained the overall downhill turn in his financial picture. His gross receipts for 1975-1977 were $80,000, $70,000 and $60,000 respectively. Tax records, not a part of the record on appeal but referred to in the record and briefs, apparently revealed a net income in those years of between $10,000 and $11,500. The respondent's net income for the first six months of 1978 was reported as approximately $6,000. An employee of the respondent confirmed the $6,000 income figure for 1978. However, on cross-examination her testimony was impeached on the basis of bias because she indicated that she put in many

off-hours' work for her employer, including entertaining the parties' minor child when he was in Chicago. Respondent's testimony indicated that his taxable income was reduced by several factors which did not affect his ability to pay maintenance or support: depreciation on his car, Keough plan payments, and personal exemptions and deductions. Despite this financial situation, respondent employs three persons to maintain his office, two full-time employees, including a niece, and his mother part-time. In addition to the salary his mother and niece receive, each also receives room and board as part of their employment. Petitioner noted in her testimony that her mother-in-law had not worked for her husband during their courtship nor after they were married.

Respondent and petitioner contradicted each other as to what transpired at the time of their separation. Respondent stated that his wife left no personal property behind when she left and in fact stole personal property owned by him, including personal effects, and one-half of all of the china, silver and furniture. This was denied by petitioner, who stated that she didn't take anything with her when she left. She claims an interest in personal property held by the husband because she spent $2,000 on china, silver, a television, and furniture and because of wedding gifts received by the couple.

We turn first to a consideration of respondent's arguments attacking the child support provisions as excessive in light of the respondent's $11,000 per year income. The respondent first asserts that the $600 per month child support payments were excessive in that they constituted 60 percent of the respondent's net income. Determination of the proper amount of child support lies within the sound discretion of the trial court and will not be set aside unless contrary to the manifest weight of the evidence. (*In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323; *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332; *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 398 N.E.2d 641; *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744.) Under section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 505), the factors to be considered in granting child support are the financial resources of the child, the financial resources and needs of the custodial parent, the standard of living the child would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the child and his educational needs, and the financial resources and needs of the noncustodial parent or parents.

While the respondent testified that his net income was approximately $11,000, the trial court could have determined that the respondent in fact had a much greater net income for his average gross income of $70,000. Indeed, the court could have concluded that the lower net income figure

represented respondent's attempt to shelter income from taxation and his wife and child by passing income to optional dependents, and taking other deductions from his gross income which did not affect the total amount of money which he had available for either maintenance or support payments. Moreover, the trial court could have found that the respondent had hidden income from the court by claiming that a $10,700 savings deposit withdrawal was made to repay nonexistent loans and that an additional $12,000 was paid to respondent's mother for a nonexistent loan she made to him to buy an interest in some Arizona apartments. The credibility of witnesses is left to the trier of fact because it is alone in the position to see the witnesses, observe their demeanor, and thus make a judgment as to the relative credibility of conflicting testimony on issues of fact. We will not reverse the trial court's finding of fact absent an abuse of discretion. *In re Marriage of McGowan* (1980), 84 Ill. App. 3d 609, 405 N.E.2d 1156; *Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 355 N.E.2d 585; *Farah v. Farah* (1975), 25 Ill. App. 3d 481, 323 N.E.2d 361.

■■ Respondent also claims that the $600 award exceeds the child's needs and was, therefore, erroneous. We reject this contention because it ignores any consideration of the standard of living the minor child would have enjoyed had the marriage not been dissolved. (*In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574, 403 N.E.2d 323.) Reviewing all of the pertinent factors in the present case, we believe that the award of $600 per month for child support was proper.

■■ Respondent next argues that he should not be required to pay one-half of his son's private school tuition because the record does not establish the necessity for the child to attend private school as there is a public school in close proximity to petitioner's residence. The petitioner directs our attention to her testimony at the hearing where she explained that she consulted with respondent before enrolling the child in nursery school to determine what type of school he thought the child should attend. At that time, respondent told petitioner that the child should attend the best school possible and that he would pay for any school that she found. Subsequently, respondent wrote a letter confirming that he would pay for the cost of the child's education. Pursuant to her conversation with respondent and his letter, petitioner enrolled the child in private school. Prior to the filing of this suit, respondent paid for the total cost of the tuition; however, since that time the tuition has been paid by respondent's niece. A child's support needs are determined in reference to the financial resources of the parties and the child individually, the standard of living the child would have enjoyed had the marriage not been dissolved, and the physical, emotional, and educational needs of the child. (Ill. Rev. Stat. 1977, ch. 40, par. 505; *In re Marriage of Edelstein*.) We do not believe that the respondent could have agreed to place his child in a private school

and then complain that a private school education and its attendant expenses were unnecessary.

The respondent's final argument in regard to the child support award is that the trial court erred in requiring him to name his son as irrevocable beneficiary on his $50,000 life insurance policy. He asserts that the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) contains no provision which would specifically authorize the court to require him to maintain his insurance for the child and that, as he was not required to maintain insurance as an attribute of support during the marriage, he should not be required to provide insurance incident to the dissolution absent such specific statutory authority.

■■ After due consideration of the new act, it is our conclusion that a parent may be required to provide or maintain life insurance with his child as irrevocable beneficiary under either section 503(d) or 510(c). Section 503(d) provides that the court may establish a trust or separate "fund" from a portion of the jointly or separately held estates of the parties to protect and promote the best interests of the children and to provide for their support, maintenance, education, and general welfare. Under this provision, a trust is not established merely because of the relative financial positions of the parties, but rather only where it is clear that it is necessary to protect and promote the best interests of the child. *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831; *In re Marriage of Preston* (1980), 81 Ill. App. 3d 672, 402 N.E.2d 332; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488; *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744.

■■ Under section 18 of the prior divorce act, a trial court was authorized to enter an order to "give reasonable security for such alimony and maintenance." (Ill. Rev. Stat. 1975, ch. 40, par. 19.) Cases construing this section recognized that a life insurance policy could be used to secure the payment of alimony or child support. (*Hogan v. Hogan* (1978), 58 Ill. App. 3d 661, 374 N.E.2d 1040; *Robin v. Robin* (1977), 45 Ill. App. 3d 365, 359 N.E.2d 809; *Imbrie v. Imbrie* (1968), 94 Ill. App. 2d 60, 236 N.E.2d 381; see generally 24 Am. Jur. 2d *Divorce and Separation* §834 (1966).) We believe that under section 503(d) of the new act a life insurance policy could similarly be required under the proper circumstances to secure the support, education, maintenance, and general welfare of a party's children. Such a "fund" may not be required, however, absent a finding that it was required to protect and promote the best interests of the children. See *In re Marriage of Atkinson; In re Marriage of Preston; In re Marriage of Olsher; In re Marriage of Raski.*

■■ In the present case, no special circumstances exist which would warrant the establishment of a trust or fund. There was no evidence that the respondent was unlikely to provide for the support of the child. While

there was an interruption of support during these proceedings and the instigation of contempt procedures, the record clearly indicates that respondent supported both petitioner and his child from the time the parties were separated until the filing of this action. Moreover, while the respondent was 55 at the time of the hearing, and in allegedly poor health, this was not a sufficient reason to require the establishment of a fund under section 503(d) to insure the continuation of the child's support. (Compare *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018.) Thus, the trial court could not require the respondent to maintain his life insurance as a "fund" under section 503(d) to secure the support, education, maintenance, and general welfare of his child.

■■ We turn next to a consideration of whether the life insurance provision was proper under section 510(c). That section provides: ·

> "Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, but not by the death of a parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment, to the extent just and appropriate in the circumstances, and such determination may be provided for at the time of the dissolution of the marriage or thereafter." (Ill. Rev. Stat. 1977, ch. 40, par. 510(c).)

Prior to the passage of this section a parent's support obligation terminated at death. Consequently, his estate could not be held liable for future support. (*Craig v. Craig* (1896), 163 Ill. 176, 45 N.E. 153; *In re Estate of Lewis* (1974), 18 Ill. App. 3d 748, 311 N.E.2d 694; *Cooper v. Estate of Cooper* (1953), 350 Ill. App. 37, 111 N.E.2d 564. But see *Reid v. Reid* (1965), 58 Ill. App. 2d 357, 208 N.E.2d 1.) Under section 510(c), however, it is clear that a parent's estate is liable for the deceased parent's support obligation "to the extent just and appropriate in the circumstances" and also that the court may determine at the time of the dissolution of the marriage the amount of support for which a deceased parent's estate will be held liable. (9A Uniform Laws Annotated, Uniform Marriage and Divorce Act §316(c), Commissioners' Note, at 185 (1979). See generally 1 Illinois Family Law §7.20-.21 (Ill. Inst. Cont. Leg. Ed. 1978); Auerbach, *An Introduction to the New Illinois Marriage and Dissolution of Marriage Act*, 66 Ill. B.J. 132 (1977).) As the supreme court explained in *Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382, this section guarantees the dependent minor child of divorced parents from loss of support through disinheritance. While the court acknowledged that a divorced parent is free to disinherit a child of his divorced marriage, it concluded

that under this section, he may do so only subject to the limited obligation of support.

■■ The propriety of requiring a parent to maintain a life insurance policy under this section appears to be a question of first impression in Illinois. The authority of a trial court to require a parent to maintain or provide life insurance to insure the fulfillment of his support obligation if he should die within the child's minority has been recognized by at least one legal commentator. (1 Illinois Family Law §7.20 (Ill. Inst. Cont. Leg. Ed. 1978).) Moreover, in *In re Marriage of Icke* (1974), 35 Colo. App. 60, 530 P.2d 1001, the Colorado Court of Appeals, when asked to review the propriety of a similar order, concluded that its statutory provision 46—1—22(3) (Colo. Rev. Stat. 1963 §46—1—22(3) (1971 Perm. Supp.)), which is almost identical to section 510(c), authorized a trial court to order a parent to provide life insurance because the parent's support obligation now extended beyond his death. (Accord, *In re Marriage of Anderson* (1975), 37 Colo. App. 55, 541 P.2d 1274.) The respondent has cited no section of the act or any Illinois decision which would prohibit the maintenance of insurance to insure that a child is provided for in the event of the death of a supporting parent, nor has he stated any circumstance or instance where such an order is to be utilized only upon a finding of special circumstances. Nor do we find anything in the present act, Uniform Marriage and Divorce Act, or the case law which would either require a strict interpretation of this section or prohibit the imposition of this type of requirement on a parent. Accordingly, we accept the rationale of the Colorado decisions which have ruled on this issue and in so doing affirm the trial court's order in this regard.

The respondent next alleges that the trial court's award of $4,000 to petitioner was against the manifest weight of the evidence. The trial court granted the award to "settle all claims against Dr. Dulyn, and that will also include monies for her maintenance until she is able to go to work." The respondent's argument that the award is not supported by the evidence ignores the trial court's authority to divide all of the parties' marital property, not merely the wedding gifts, in "just proportion" considering all relevant factors including duration of the marriage. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1) through (10).) Equal distribution of marital property is not required as long as the forementioned factors have been considered by the trial court. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336; *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266.) Moreover, a trial court's distribution of marital property is discretionary and will not be disturbed unless there is a clear abuse of discretion. *In re Marriage of Piktel* (1980), 81 Ill. App. 3d 567, 401 N.E.2d

584; *In re Marriage of Sipich* (1980), 80 Ill. App. 3d 883, 400 N.E.2d 696; *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 396 N.E.2d 859.

■■ In reviewing the record as to the marital assets of the parties, we find the trial court could have found the respondent's assets sufficient to allow the present award. The trial court could have determined that the marital assets included the $2,000 worth of silver, crystal, and furniture purchased by the parties, wedding gifts including linens, crystal, and household goods, the $12,000 Arizona apartment interest purchased in 1973, the $10,700 withdrawn from respondent's savings account shortly after this suit was filed, the respondent's Lincoln Continental, and petitioner's four-year-old Lemans. We note that neither party has suggested that due to the parties' lengthy separation property ceased to be marital or nonmarital property. Moreover, the record supports the conclusion that the court duly considered the relevant factors in this cause including the limited duration of the parties' cohabitation, the limited contribution of petitioner in the marital assets, and the reasonable opportunity of each spouse in acquiring future assets and income in making the award to petitioner. Accordingly, we do not find that the trial court abused its discretion in granting this award. In so finding, we find it unnecessary to consider whether the trial court could have partially or totally awarded the $4,000 to petitioner as a lump sum maintenance award.

The respondent's final argument is that the trial court erred in awarding petitioner attorney's fees in the amount of $5,000. The amended petition for fees filed by petitioner's attorneys sought fees in the amount of $5,542.50 based on a rate of $100 per hour for court time and $75 per hour for office time. Respondent maintains that the section 508 requirement that a hearing be conducted concerning attorney's fees was not met and, moreover, that there was no finding that petitioner was financially unable to pay attorney's fees while the respondent was able to pay. (Ill. Rev. Stat. 1977, ch. 40, par. 508.) Respondent further maintains that the award was excessive as a matter of law because the grounds of the dissolution were uncontested and because of the meager assets involved here due to his failing health.

■■ ■ Attorney's fees are awarded in the sound discretion of the trial court (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56; *In re Custody of Scott* (1979), 75 Ill. App. 3d 710, 394 N.E.2d 779); however, a court of review will not hesitate to reduce the fees awarded if they are unreasonably high. (*Donnelley v. Donnelley; Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) In awarding fees, consideration is given to a variety of factors including: the skill and expertise of the attorneys employed; the financial positions of the parties; the nature of the controversy; the novelty or difficulty of the questions raised; the

importance of the question from a family law viewpoint; the degree of responsibility involved from a management perspective; the time and labor involved; the usual and customary charge for the same or similar services; and the benefit or result provided. (*Donnelley v. Donnelley*; *Christian v. Christian*; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Of these the time factor is probably given the same or greater weight than any other factor. (*Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1; *Donnelley v. Donnelley*.) To justify an award of attorney's fees, the party seeking relief must demonstrate financial inability to pay and the ability of the other spouse to do so. *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 405 N.E.2d 1099; *In re Marriage of Fleming* (1980), 80 Ill. App. 3d 1006, 400 N.E.2d 625.

■■ ■ Application of the foregoing principles indicates that the award of fees in this cause is excessive. While a variety of motions were filed as to custody and visitation, the issues presented were neither novel nor relatively complex from a family law viewpoint. (Compare *Donnelley v. Donnelley* with *Hall v. Hall* (1976), 43 Ill. App. 3d 97, 356 N.E.2d 1156.) Moreover, we note that the amended petition for fees includes 20.3 hours of court time out of a total of 67.4 hours submitted for consideration. Generally, court time is charged at a higher rate in recognition of the greater skill required for this type of work but courts do not hesitate to reduce the total number of court-time hours billed if such skill is not demonstrated. (*Donnelley v. Donnelley*; *Gasperini v. Gasperini*.) The amended petition indicates that a number of hours were expended in filing simple motions and obtaining continuances. We do not think that this type of work requires the "greater skill" contemplated by billing court time at a higher rate. Thus we do not believe that the trial court's award is substantiated from the record. Accordingly, we find that the award must be reduced to $4,000. In concluding, we note that petitioner has filed a motion during this appeal for attorney's fees for the defense of this appeal. The question of attorney's fees for services on appeal should be presented to the trial court for its consideration.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part, reversed in part.

GOLDBERG, P. J., and McGLOON, J., concur.