*In re* MARRIAGE OF RUTH ANN BLOCK, Petitioner-Appellee, and WILLIAM M. BLOCK, Respondent-Appellant.

Second District   Nos. 81—831, 81—968, 82—13 cons.

Opinion filed October 29, 1982.

William G. Rosing and Stephen G. Applehans, both of Rosing, Carlson & Magee, Ltd., of Waukegan, and Roger A. White & Associates, of Lake Bluff, for appellant.

Jerome Marvin Kaplan and Grant & Grant, both of Chicago, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

William M. Block appeals from the portion of the judgment dissolving his marriage to Ruth Ann Block which divided property and awarded the wife unallocated maintenance and child support. The husband also appeals from an order disposing of reserved matters not incorporated in the decree of dissolution.

In the decree entered September 25, 1981, dissolving the 1957 marriage of the parties, the trial court determined that the gross marital assets of the parties were between $1,750,000 and $1,810,000 and that there were marital debts of $1,621,000. The court arrived at a net worth of $437,501 as follows:

|      |                                        |           |
|------|----------------------------------------|-----------|
| I.   | Excess Marital Assets Pledged          |           |
|      | State Bank of Antioch                  | $ 73,000  |
|      | Marine Bank                            | $ 25,000  |
|      | Zion State Bank                        | $ 24,000  |
| II.  | Equity in Weldon Square Apartments     | $ 35,000  |
| III. | Current Value of Profit Sharing Plan   | $226,183  |
| IV.  | Current Value of Pension Plan          | $ 54,018  |
|      | Net Marital Assets                     | $437,501  |

The court refused to consider as marital debts a second mortgage on the marital residence ($122,000) and a purchase money mortgage on a racing boat ($70,000). The court found that the husband incurred these debts in contemplation of divorce and in dissipation of the marital estate. Also, the court found that the husband was in debt to his daughter Stephanie for dividends on shares of family stock which he had used during the marriage. The court then ordered, *inter alia,* that the wife be awarded $328,125 representing 75% of net marital assets, payable in a lump sum or in monthly installments; that the husband pay the medical, dental and college expenses of Stephanie, the minor daughter of the parties, until she reached the age of emancipation or graduated from college; that the husband place in trust for Stephanie's benefit her stock shares and that he repay all dividends earned on shares which he had used; that each spouse be awarded 700 shares of nonmarital stock registered to each; and that the marital home be sold with the net proceeds to be applied toward the wife's property award. The court reserved for later hearing questions regarding payment of attorney fees and certain marital home debts and other matters then pending under various petitions.

Various questions are raised by the husband.

I

### The Outstanding Bank Loans

Principally in issue is whether the trial court properly found that certain pledges of stock against loans were excess marital assets which increased the net marital estate.

A. *The State Bank of Antioch loan*—the parties stipulated that the balance due on the loan incurred in 1966 or 1967 to purchase Quaker Industries stock, and renewed in 1980 by a co-signed note of the parties, was $334,500. The note was secured by 4073 shares of Quaker Industries, a Block family-operated closely held corporation. The husband is the son of Hattie Block, the principal shareholder of Quaker Industries and is a salesman and executive vice-president of the company. The husband pledged 1000 shares of Quaker Industries stock registered to the "Hattie Block Trust," 930 shares registered to William M. Block individually, and 2143 shares registered jointly to the parties against the loan.

The court placed a fair market value of $100 per share and calculated the marital equity in the Quaker Industry stock at $407,300

(4073 shares at $100), deducted the $334,500 debt, leaving $73,300 which the court found to be "excess marital assets" to be divided. We find no basis in the record for this disposition.

The Hattie Block trust stock certificates bear a May 1, 1980, date, approximately 10 months after the parties separated as found by the court. In 1967 the board of directors of Quaker Industries passed a resolution providing that if Quaker Industry shares were pledged against loans, the corporation would repurchase the shares for the amount of loan in default.

The wife argues that the trust shares were available to the husband to use at his will, and for his tax advantage. No trial testimony, however, related to the circumstances surrounding the pledge of the shares of the Hattie Block trust. While, in effect, the wife urges that the Hattie Block trust stock was essentially a gift to the husband presumably commingled with marital collateral disguised to afford the husband tax advantages as well as to avoid payment of a gift tax, there is no support for this argument in the record. Nor is there support in the record for the husband's insistence that the trust shares were for accommodation only. There was no testimony produced by either party which would aid us in analyzing the effect of a repurchase of the stock. Nevertheless, the wife argues here that in the event of a default Quaker Industries could buy back its shares at less than the determined $100 fair market value (*i.e.*, 4073 shares for the $334,500 indebtedness). There was also no testimony to support the wife's argument here that the husband will receive tax benefits not available to the wife. In the absence of a proper foundation for these arguments we have no basis to consider them as they amount to a mere speculation. See *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 167; *In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 509.

The wife's argument that the court did not find the Hattie Block trust shares to be marital property but applied their value to reduce indebtedness and leave a "surplus" does not aid in solving the problem. The law requires that debts as well as assets must be equitably proportioned. (*In re Marriage of Simmons* (1981), 101 Ill. App. 3d 645, 647.) If the value of the Hattie Block trust stock is not applied to the $334,500 indebtedness, the husband's 930 shares ($93,000) and the jointly held 2143 shares ($214,300) would be subject to repurchase by Quaker Industries. This would leave a short-fall of $27,200 ($334,500 minus $307,300) which presumably could be a marital debt. On the record before us it was error to apply the Hattie Block trust shares against the debt to reach a net equity in the marital assets pledged.

B. *The Zion State Bank loan*—there was a balance due of

$46,398.95 on a similar loan at the Zion State Bank. This loan was secured by 1286 shares of Quaker Industries stock valued at $128,600 belonging to the now emancipated daughter of the parties, Kimberly Block (the husband is the custodian under a uniform gift to minors trust), and 240 shares jointly owned by the parties ($24,000). We find no basis for the court's determination that Kimberly's shares could be used to reduce the marital indebtedness, so as to result in an "excess."

C. *The Marine National Bank loan*—there was also an indebtedness owing to the Marine National Bank in the amount of approximately $218,000. The debt was incurred for living expenses, for payment of interest due on other loans, and for business debts arising at least partly out of the parties' high fashion clothing store, Giovanni's, which was then in the process of losing between $400,000 and $500,000. Two thousand four hundred and thirty shares of Quaker Industries registered to William Block individually ($243,000) and 1100 shares registered to Hattie Block were pledged. The trial court arrived at $25,000 in net marital equity as follows: $243,000, the husband's shares, (2430 shares x $100/share) minus $218,000, or $25,000.

The husband contends that the trial court overlooked the fact that interest continues to accrue on the loan at a rate of $43,722.95 per annum and that he is without funds to pay even the interest accruing. We conclude that the court did not abuse its discretion in believing that the husband had the capacity to earn money such that the debt would not consume the net equity.

■ In determining the certainty of present income, a court may properly consider past earnings. (See *In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 837; *In re Marriage of Reyna* (1979), 78 Ill. App. 3d 1010, 1014.) In the final three years of marriage, the husband's gross annual income varied between $260,000 and $280,000; his dividend income on his shares and jointly held shares summed to $43,450 alone in 1980.

■ On the state of the record the proof does not support the conclusion of the trial court that there were excess marital assets pledged against the State Bank of Antioch and the Zion State Bank loans. Additionally, we find no basis for applying the daughter's shares of stock so as to result in a net marital asset to be divided by her parents. In this regard a remand is necessary to determine whether the Hattie Block Trust shares represent an accommodation or a gift. On remand, the daughter's shares may not be considered in reduction of marital indebtedness.

## II

### The Weldon Square Apartments

■ The husband argues that the trial court erred in ascribing a marital equity of $35,000 to an asset described as the "Weldon Square Apartments." The husband testified that this was an investment in Cleveland which he and his brother went into almost 10 years before the hearing "strictly for tax write-off purposes," that the tax schedule was set up for 10 years, the property to be then sold; but that it operated at a loss and had no asset value. The husband, however, had placed a value of $35,000 on his interest as shown in financial statements dated September 1, 1978, and August 23, 1979. The husband explained that the statements were stale and that subsequent losses exceeded any asset values. The valuation of assets is a question of fact. (*In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 252.) The trial judge could, as he apparently did, find the financial statements more credible than the husband's testimony at trial. The husband's financial statement is competent evidence of value to enable the court to make its determination in the absence of expert testimony as to valuation or other evidence more persuasive than the unsupported personal opinion of one of the parties.

## III

### Debts Found to Have Dissipated Marital Assets

A. *Mid-West National Bank of Lake Forest, Second Mortgage on the Marital Residence.* The husband contends that the second mortgage on the marital residence in the amount of $122,056.57 (principal and interest), dated April 30, 1981, was not an intentional dissipation of marital assets incurred in contemplation of divorce, as the trial court found, but is a legitimate debt to pay living expenses and other debts accumulated by the high living style of the parties. The husband argues that it was therefore error to exclude the mortgage balance from the marital debts.

■ Where a spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time in which the marriage is undergoing an irreconcilable breakdown, the court may consider that conduct and compensate the disadvantaged spouse when apportioning the marital property. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 462.) The husband testified generally he borrowed the money in the spring of 1979 and that the purpose of the

loan was to finance the parties' affluent life style but did not show specific disposition of the funds. While the mortgage was dated and recorded April 30, 1981, there is evidence that an original promissory note as evidence of the same indebtedness was dated October 29, 1979, and states that it is secured by a junior mortgage on the marital residence. Because of the meager evidence bearing on the use and purposes of the mortgage we are unable to agree with the finding of the trial court that it amounted to a dissipation of assets at a time when the marriage was undergoing an irrevocable breakdown. On remand the trier of fact should address this issue on the basis of more particular evidence than we find in this record.

■ B. *The "Scarab" Racing Boat*—The husband also contends that the trial court's treatment of his purchase of the *Scarab,* a racing boat, as a debt in dissipation of the marital estate is in error in several respects. The husband purchased the boat in February or March of 1979, shortly before the parties physically separated, for approximately $70,000. The record also shows that at the time he already owned a large yacht that he had leased out because he could not afford to maintain it. There was also evidence that the balance of the indebtedness at the time of trial was approximately $69,000, that there were $7,000 owed in repairs and that the *Scarab* was found by the court to be marital property worth between $40,000 and $70,000. We agree with the trial court that the transaction could properly be considered a dissipation of assets, and the court could properly consider the dissipation in dividing marital property "in just proportions." Ill. Rev. Stat. 1981, ch. 40, par. 503(d)(1).

The trial court made no finding of the present fair market value of the *Scarab* except in the range of $40,000 to $70,000. If the approximately $70,000 loan is taken into consideration on remand, the trier of fact would also be required to determine the fair market value of the *Scarab* at the time of the original trial as an offset against the indebtedness. Of course, if it should appear that the value of the boat is approximately the same as the amount of indebtedness there would be no net effect on the marital estate.

IV

*The Trust Imposed on the Quaker Industries Stock*
*Given for the Benefit of Stephanie Block*

The husband urges that the trial court was without authority to impose a trust on 1736 shares of Quaker Industries stock which the

husband's parents gave to the parties' minor daughter, Stephanie, under the Uniform Gifts to Minors Act (Ill. Rev. Stat. 1981, ch. 110½, par. 201 *et seq.*). The court further ordered that the trust be subject to an accounting, as the wife deems necessary upon proper notice to the husband, required the husband to remove all liens against these shares within two years from the date of judgment and to repay dividends on the shares which he had used. The husband is the custodian of the shares.

The wife claims that the trial court properly exercised its equitable powers pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act. This provides, however, that "[t]he court may protect and promote the best interests of the children by setting aside a portion of the *jointly or separately held estates of the parties* in a separate fund or trust ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 40, par. 503(d).) Effective January 1, 1982, this subsection as amended is redesignated subdivision (f) of section 503.

■ The authority of Illinois courts to set aside separate funds or create trusts for dependents is strictly limited to the purposes set forth in this subsection. There must be a showing that the establishment of a trust is necessary to serve the best interests of the child; and the trust is not to be established for the general benefit of the child, but must instead be established proportionate with the support and educational needs of the child and limited to the period in which a duty to support exists. (*In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 310; *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 632-33; Ill. Ann. Stat., ch. 40, par. 503, Historical and Practice Notes, at 476 (Smith-Hurd 1980).) The emphasized language of subsection (d) quoted above and the decisions limit the court's trust powers to the marital and nonmarital property of the parties before the court. (See also *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 400; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 637-38; *Milenkovic v. Milenkovic* (1981), 93 Ill. App. 3d 204, 216-17; *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 178-79.) Thus the trial court does not have the equitable powers claimed under this section to set aside the minor's separate property. The cases cited by the wife in support of such authority are factually distinguishable on this ground.

In this connection it may be noted that, contrary to the wife's assertion, the trial court is not "impotent" to remedy abuses committed by a custodian. Under the Uniform Gifts to Minors Act (Ill. Rev. Stat. 1981, ch. 110½, par. 208(a)) Stephanie or her mother may petition for an accounting of the shares.

V

### The Provision Requiring the Husband to
### Pay Stephanie's College Expenses

The trial court ordered the husband to pay future college expense for Stephanie, the minor daughter of the parties, subject to his right to petition the court at a later time to use Stephanie's own assets. The husband contends that this was error, both because the wife is able to contribute to these expenses from her award of marital property and because Stephanie's substantial assets would allow her to meet the obligations.

Section 513 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 513) provides in substance that the court may make provision for the education and maintenance of children "whether of minor or majority age, out of the property and income of either or both of its parents as equity may require" considering the financial resources of both parents, and the financial resources of the child.

■ The statute clearly gave the trial court authority to make an equitable contingency provision for the education of Stephanie during and beyond her minority. (*Imes v. Imes* (1977), 52 Ill. App. 3d 792, 796.) The court could compare the "financial resources of both parents" as the statute enjoins and properly find that presently the husband's financial resources are superior. In the last three years of the marriage the husband's gross annual income was from $260,000-$280,000 with apparently no Federal income tax paid. The wife's economic opportunities are limited, she was principally a homemaker, 41 years old, unemployed, had no particular job skills, only a high school education and suffered from nervous tremors. While the husband suggests that his debts are "staggering," on analysis this appears to be an exaggeration. Approximately $55,000 in three mortgages on the parties' investment properties in Kenosha are held by the husband's mother. Two of the obligations are interest-free second mortgages which are without notes providing for repayment. The husband has made no payment to his mother on a third mortgage. Moreover, the court order directing the sale of the marital residence will liquidate approximately $250,000 of the husband's debt.

The court is required by the statute to also consider the "financial resources of the child." Stephanie, age 15½ at the time of the decree, has 1726 shares of Quaker Industries stock which were valued in the proceeding at $100 per share or a total of $172,600. The court, in effect, reserved jurisdiction until a future date to determine whether a

part of these shares should be available for Stephanie's college expenses. When these expenses become an actuality the parties may then petition the court to exercise its discretion under the statute, and the court at that time will be in a better position to make its determination. However, we conclude that it was not an abuse of discretion to enter the order in the form stated.

■ We conclude, however, that the court did abuse its discretion in ordering the husband to pay Stephanie's medical and dental expenses until she reaches the age of emancipation or graduates from college, whichever occurs last. For reasons previously stated, the trial court could find that the husband was the parent in the superior financial position to bear Stephanie's medical and dental expenses while she was a minor. (*In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 316.) In the form stated, however, the court order is not limited to the period in which a duty of support exists under section 513, for the order would require the husband to pay all medical and dental expenses of his adult daughter even if she is not disabled or then attending school, but self-supporting out of her income-producing assets. We conclude that the trial judge should have reserved the same option of apportioning these maintenance-related expenses out of Stephanie's own funds when the court had already done so for Stephanie's college education. Otherwise, it is an abuse of discretion for the court to disregard that the adult child's financial resources substantially exceed expected education and maintenance expenses. *Westerberg v. Stephens* (1979), 76 Ill. App. 3d 119, 123.

## VI

### *The Nieman-Marcus Charge*

■ The husband also claims that the trial court abused its discretion in ordering him to pay the $20,104.74 balance due in a Nieman-Marcus charge account, which he claims was used entirely by the wife for her clothing purchases. He does not contend, however, that the clothing charge dissipated the marital estate, or that the wife incurred these charges after she left the marital home. The court's decision does not amount to an abuse of discretion, given the statutory factors referred to in section 503(c) of the Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1981, ch. 40, par. 503(c).) By ordering the husband to pay the $20,000 debt the trial court in effect simply awarded the wife this sum as additional property in accordance with its division of the marital property into just proportions. See *In re Marriage of Wiedner* (1979), 75 Ill. App. 3d 1014, 1018-19.

## VII

### The Effect of the October 13 Order

In an agreed order of October 13, 1981, with reference to matters which the trial court had reserved at the time of entering the dissolution decree, the trial court directed each party to pay his or her own attorney fees; ordered the wife to sell to the husband her 700 nonmarital shares in Quaker Industries for $45,000; required the husband to furnish a wage assignment for unallocated maintenance and child support; granted the wife leave to move to California with Stephanie; credited the husband with $2,209 on the wife's property award with a corresponding $250 reduction in monthly installments; and provided that the wife's attorney serve as escrowee of the wage assignment furnished as security for the property award.

On November 10, 1981, the wife moved to vacate this order based on her understanding that the husband had violated the agreement by appealing on October 23 from the September 25 judgment of dissolution. In its order of November 10, 1981, the trial court denied the motion, finding that the husband's notice of appeal ousted it of jurisdiction to vacate the October 13 order and the November 10 order which have been consolidated here.

The parties have somewhat changed their position in oral argument. The husband now requests that the October 13 order stand regardless of modification of the net marital estate. Contrarily, the wife has asked that the October 13 order be vacated unless the trial court's valuation of the net marital estate is affirmed.

The law favors amicable settlement of property rights in cases involving dissolution of marriage and are reluctant to disturb an agreed order in the absence of fraud, coercion, or settlement terms which are against public policy or morals. (*Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 520-21.) Here the wife has not argued that she agreed to the sale of stock or to paying her own attorney fees under coercion. The sales price of $45,000 for the closely held shares does not seem unconscionable. The agreed order on its face contains no condition barring appeal, nor is it otherwise conditioned. The fact that the agreement may be less advantageous to the wife if there is a reduction in the net marital estate on remand does not make it unconscionable. The settlement applied to separate matters and we cannot agree that it was "inextricably interwoven" with the appeal from the dissolution judgment.

We conclude that the cause must be remanded. In doing so we are

impelled to comment that the trial judge made a thorough and conscientious effort to deal with complex financial affairs involving varied assets and complicated debts and was even more burdened than necessary because of the failure of the parties to present testimony which might have aided in better assessing the import of the various transactions. Moreover, based on the record, we agree generally with the allocation of net marital assets, except to the extent we have indicated in particular details.

The dissolution judgment of September 25, 1981 (No. 81-831), is reversed and the cause remanded for further proceedings consistent with this opinion. The orders of October 13, 1981 (No. 81-968), of November 10, 1981, and of December 7, 1981 (No. 82-13), are affirmed.

Reversed in part and remanded; affirmed in part.

UNVERZAGT and REINHARD, JJ., concur.