*In re* MARRIAGE OF CATHERINE M. MURPHY, n/k/a Catherine M. Madonia, Petitioner-Appellant, and MICHAEL R. MURPHY, Respondent-Appellee.

Fourth District   No. 4—93—0717

Argued February 16, 1994.—Opinion filed March 31, 1994.—Rehearing denied May 5, 1994.

Jeffrey B. Rock (argued), of Hasselberg & Rock, of Peoria, for appellant.

Diana N. Cherry (argued), of Metnick, Barewin, Wise & Cherry, of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

On July 17, 1990, petitioner, Catherine Murphy, filed a petition in the circuit court of Sangamon County seeking dissolution of her marriage to respondent, Michael Murphy.

The largest asset of the parties is a personal injury settlement obtained by them as a result of respondent being shot in the parking lot of a Hardee's restaurant in Springfield on January 17, 1985. A lump-sum payment of $800,000 was made to the parties jointly as well as annuity payments of $90,000 guaranteed for 20 years beginning August 15, 1990. In addition, for each year respondent lives after August 15, 2009, the parties were to be paid an additional $90,000.

A judgment of dissolution was entered on November 13, 1992, which (1) provided for joint custody of the minor child with physical custody awarded to petitioner; (2) ordered respondent to pay child

support of $600 per month and pay all tuition and fees for a parochial school education for the child as well as provide medical insurance for him; (3) awarded the marital residence and its contents to petitioner; (4) denied maintenance to both parties; and (5) awarded petitioner $220,000 from the personal injury award (this included the $90,000 1992 annuity payment). Respondent was awarded the remainder of the annuity payments as his sole and separate property. The marital debts were divided fairly evenly as were the parties' automobiles, bank accounts, insurance and pension plans.

Petitioner appeals, contending the trial court erroneously failed to find dissipation and abused its discretion in allocating the personal property. We disagree and affirm.

Petitioner first argues respondent dissipated the assets received from the personal injury settlement. While the accounts holding these assets were in the name of both parties as joint tenants with right of survivorship, the respondent was the only one using the accounts. The accounts were frozen by court order January 6, 1992, after respondent filed a petition for temporary relief alleging petitioner had attempted to assert exclusive control over the accounts.

Dissipation means the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of O'Neill* (1990), 138 Ill. 2d 487, 497, 563 N.E.2d 494, 498-99.) In support of her claim, petitioner cites respondent's own exhibit indicating for the period from January 2, 1990, through December 31, 1990, funds expended from the cash management account containing the personal injury proceeds totalled $28,328.20. Petitioner's petition for dissolution was filed on July 17, 1990. For calendar year 1991, withdrawals from the account increased dramatically and totalled $96,845.94.

Petitioner argues respondent's financial affidavit listed his personal monthly expenses for 1991 as $3,183.93. She then points out respondent testified he paid a total of $16,049.60 or $1,604.96 monthly for petitioner's expenses the first 10 months of 1991. For the last two months of 1991, respondent paid her only $600 per month in child support, for a total of $1,200. Petitioner notes respondent's same financial affidavit shows net income for 1991 totalling $34,862.16 and expenses in the amount of $36,221.24, providing a shortfall of less than $1,400, which did not require the withdrawal of $96,000 from the invested funds.

The evidence as to respondent's actual monthly expenses is not clear. The affidavit to which petitioner refers is unsigned and was

filed during pretrial discovery. Respondent referred to another affidavit during his testimony at trial and another affidavit was filed by him after the evidence was heard. The figures in all three affidavits differ. The monthly expenses seemed to increase with each succeeding affidavit.

Once a *prima facie* case of dissipation is made, the party charged with dissipation must establish by clear and convincing evidence how the funds were spent; general and vague statements are not enough. (*In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 549-50, 511 N.E.2d 676, 680.) Assuming petitioner made such a *prima facie* case with the figures she has chosen to use, respondent was questioned extensively and answered in great detail on the use he made of the funds he withdrew from the settlement accounts. Some of the expenses respondent testified to were not covered on the monthly expenses. For instance, petitioner testified despite the fact many improvements were made to the marital residence to accommodate respondent's disability, it was agreed she and their son Bobby would remain there and respondent would have to find another residence when they separated. Respondent paid $20,000 down on a condominium as his new residence. He then paid $5,985 for new appliances and $1,500 for landscaping. When respondent moved out of the marital residence he took with him only a small dresser, a desk, a personal computer, a kitchen table, hunting clothes and equipment and some of his clothing. He then paid over $25,000 to furnish the condominium, including furnishing a bedroom for Bobby when he came for visitation. He testified also to spending almost $1,800 on patio furniture.

Other expenditures to which respondent testified included over $2,700 for a television, compact disk player and tape deck, a telephone for $145.58, over $2,200 for new clothes, an aquarium for Bobby, monthly piano lessons for Bobby in an unspecified amount and at least $736 paid on the outstanding balances of marital credit card accounts. Respondent's testimony also included approximately $5,200 paid for vacation trips taken with his girlfriend as well as gifts for her. Finally, respondent's testimony reflected $2,600 worth of checks written for cash for which he had no particular explanation.

As petitioner rightfully notes, taking vacation trips with someone other than the spouse has been held to constitute dissipation. (*In re Marriage of Osborn* (1990), 206 Ill. App. 3d 588, 600-01, 564 N.E.2d 1325, 1332.) It is also true while expenditures of marital funds for necessary, appropriate and legitimate living expenses do not constitute dissipation of marital funds, excessive expenditures do. (*In re Marriage of Hagshenas* (1992), 234 Ill. App. 3d 178, 197, 600 N.E.2d

437, 451.) Petitioner argues the large expenditures made by respondent did not benefit the marriage and, further, his explanations were generalities which were not specific enough on how the funds were spent to meet the clear and convincing evidence test set forth in *Partyka* (158 Ill. App. 3d at 549-50, 511 N.E.2d at 680).

We find respondent's answers were much more specific than the vague generalities noted by the court in *Partyka* (158 Ill. App. 3d at 551-53, 511 N.E.2d at 681-82). Further, his expenditures were, on the whole, legitimate expenses incurred in setting up an entirely new household made necessary by the separation and impending dissolution.

■ Dissipation is only one of the factors to be considered by the trial court under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)) when dividing marital property. The trial court is not *required* to charge against a party the amounts found to have been dissipated but *may* do so. (*Partyka*, 158 Ill. App. 3d at 550, 511 N.E.2d at 680; *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 870, 441 N.E.2d 1283, 1288.) The trial court heard extensive testimony concerning respondent's expenditures and his explanations for them. The court specifically stated it considered the factors under section 503(d) of the Act, and the trial court is not required to make specific findings as to the reasons for its award. *In re Marriage of Caldwell* (1984), 124 Ill. App. 3d 898, 901, 465 N.E.2d 523, 526.

While petitioner argues respondent dissipated over $96,000 in assets, the evidence indicates a significant portion of the money spent by respondent went toward buying and furnishing a new home for himself after he left the marital residence. The amount spent on trips with his girlfriend and gifts for her was relatively small, about $5,200, and in addition he failed to account for $2,600 in checks written for cash. While petitioner feels the amount respondent spent in furnishing his two-bedroom condominium was high, there is no indication it was unduly extravagant. There is no requirement respondent furnish his home exclusively with inexpensive furniture and accessories.

■ Any dissipation in assets proved was in the amount of about $7,800 used in trips and gifts involving respondent's girlfriend and in unaccounted-for expenditures. There was no error in the trial court's not finding dissipation in the amount of $96,000. As the court did not set forth its reasons for the distribution of property, it is unclear whether it charged $7,800 or any other amount against respondent. The court was dividing up assets derived from a personal injury settlement worth $1.8 million. Thus, dissipation in the amount of

$7,800 would not necessarily materially affect the division of property. We find no abuse of the trial court's discretion in failing to find respondent's dissipation of assets required a major charge against his share of marital property.

▮ Petitioner next argues the trial court abused its discretion in awarding her an insufficient amount of the personal injury settlement which she and respondent received together. She argues she should have received the loss of consortium portion of the personal injury claim as her property because that would have been attributed to her personal loss. Further, petitioner argues she should also have received a portion of the rest of the award which was attributable to projected future medical and lost wages as those losses were marital in nature. Petitioner cites no cases in support of her position but bases this argument on the testimony of respondent's expert witness, attorney Robert Gillespie, who represented Hardee's (the defendant), in the parties' personal injury action. It was Gillespie's testimony when valuing a claim for settlement purposed, 20% of its value is usually attributable to a spouse's loss of consortium claim. Petitioner also maintains Gillespie testified an additional 20% of each $90,000 annuity payment would be attributable to the loss of consortium claim. A review of the record does not find this claim reflected in his testimony.

The trial court followed the holding of this court in *In re Marriage of Burt* (1986), 144 Ill. App. 3d 177, 494 N.E.2d 868, in dividing the proceeds of the personal injury claim. *Burt* dealt with a situation where husband was injured in an automobile accident *after* the petition for dissolution was pending. Prior to division of property in the dissolution case, the ex-husband settled his personal injury claim for $230,000. The record in *Burt* indicated a significant portion of the settlement proceeds was for future pain and suffering and future disability and loss of earnings. (*Burt*, 144 Ill. App. 3d at 178, 494 N.E.2d at 869.) The *Burt* court held a cause of action for personal injury occurring during a marriage is marital property in its entirety (*Burt*, 144 Ill. App. 3d at 178, 494 N.E.2d at 869), despite the fact certain aspects of the cause of action involve a loss to an injured party that could not be considered to be shared by others. *Burt*, 144 Ill. App. 3d at 182, 494 N.E.2d at 871.

The trial court gave the ex-wife a one-half interest in the value of the annuity and one-half of the cash balance of the settlement. There is no indication the ex-wife received any other property but she did receive custody of the minor children and child support. The *Burt* court noted in dividing property other factors besides those expressly enumerated in section 503(d) of the Act could be considered and pain,

suffering and disability of an injured spouse were some of those factors. *Burt,* 144 Ill. App. 3d at 182, 494 N.E.2d at 871.

A reviewing court will not substitute its judgment for that of the trial court in dividing property absent abuse of discretion and such abuse will be found only where no reasonable person would adopt the position of the trial court. (*Caldwell,* 124 Ill. App. 3d at 901, 465 N.E.2d at 525.) We find no abuse here. There was no amount fixed in the settlement award as anticipated medical expenses or future lost wages. Gillespie testified the settlement did not include past medical and wage losses because those were taken care of by the workers' compensation award. The settlement was for the injury to respondent and the consequent disability he would carry for the remainder of his life. Gillespie further stated petitioner's claim for loss of consortium did not add anything to the settlement figure because the case would have settled for the *same* amount if respondent had been single. The entire award should be considered marital property, but none of it was actually attributable to a loss particular to petitioner.

Petitioner, a 34-year-old secretary for Central Illinois Public Service (CIPS), has an annual salary of just over $23,000. In the division of property she received a total of $220,000 from the personal injury settlement, $600-per-month child support, a 1989 Saab automobile worth over $16,000, the marital residence worth $67,632 (net equity), her CIPS long-term savings worth $7,400, and other items of lesser value. She will be required to make the mortgage payments and auto loan payments and pay her own debts in the amount of $5,872 (which includes attorney fees). Petitioner's salary plus child support will give her an annual income of about $31,000.

Respondent, also 34 years old, will receive the remaining $90,000 annuity payments in their entirety as they are paid. As a result of employment with the State of Illinois Department of Rehabilitative Services, he receives an annual salary of $50,000. In the division of property he received a 1989 Suzuki Sidekick, his condominium and responsibility for marital debts totalling $4,188.

As noted in *Burt,* the trial court may consider the pain, suffering and disability of an injured spouse when making a division of property. Respondent's injuries resulted in paralysis from the chest down. He has no function or feeling below the chest level and is confined to a wheelchair but needs no assistance in day-to-day activities. He drives a specially equipped vehicle and cooks for himself, but has a housekeeper weekly to clean his home. Through intense therapy and hard work respondent has managed to make himself virtually self-sufficient and even able to enjoy some of the same activities as before the accident, such as hunting and fishing. Evidence was presented on

the increase in Michael's living expenses due to the need for special-ized equipment and its replacement and maintenance, with an annualized figure for these expenses in excess of $18,000. In addition, evidence was presented indicating respondent was more susceptible to certain medical conditions, requiring expenses between $4,500 and $20,000 depending upon the exact condition.

Evidence was also presented on how the shooting affected petitioner's life. She testified she was the one who cried a lot while respondent tried to remain strong. Petitioner testified suddenly she had all of the responsibility for cleaning, cooking, child care, yard work, home maintenance, plus her secretarial position as well as giving respondent support in his rehabilitation. Petitioner sometimes became angry and frustrated because respondent seemed to accept the situation well.

Because respondent has made a marvelous recovery from his injury, his expenses and lost wages to date have been less than anticipated at the time of settlement. Petitioner believes she deserves a larger share of the settlement because not as much has been used to date as had been predicted. However, *all* the risks of loss of income and increased costs of living and medical expenses that stem from the injury will now be borne by respondent alone. Petitioner leaves the marriage the same way she entered it: an employed, healthy, able-bodied person. Petitioner's evidence detailed her suffering due to respondent's injury. As a spouse she did suffer, but respondent will live with the paralysis for the remainder of his life. He not only endured pain and suffering at the time of the initial injury but has the ongoing absence of normal bodily function below the chest level with all of the risks and hazards in both health and personal life at-tendant upon such paralysis. This paralysis was the basis for the personal injury award and that which the trial court could rightfully consider when dividing the marital property.

Petitioner admits no amount of money could ever truly compen-sate respondent for his injuries but argues on appeal there was enough money available to both take care of respondent's family and attempt to make him whole for his suffering and loss. Of note is the fact petitioner spent her time in the trial court arguing she was not receiving more of the settlement monies as a matter of compensation to her for her "lost dreams" of living happily ever after with her high school sweetheart rather than expressing concern for lack of support for the parties' child.

Petitioner received more than just a share of the proceeds of the personal injury settlement, which were the bulk of the marital estate after the parties' 10-year marriage. Her total award was almost

$300,000. An award of property is to be made in "just proportions" (Ill. Rev. Stat. 1991, ch. 40, par. 503(d)), but that does not mean equal proportions. (*In re Marriage of Pruitt* (1981), 101 Ill. App. 3d 755, 759, 428 N.E.2d 732, 735.) No abuse of discretion is demonstrated simply because the trial court awarded a larger share of the marital estate to one party. *Caldwell*, 124 Ill. App. 3d at 901, 465 N.E.2d at 525.

The trial court's division of property is supported by the evidence and is not unreasonable. We find no abuse of discretion in the division of property.

The judgment appealed from is affirmed.

Affirmed.

COOK and STEIGMANN, JJ., concur.