*In re* MARRIAGE OF ROSENDO ADAN, Petitioner-Appellee, and HAYDEE QUINTERO ADAN, Respondent-Appellant.

First District (1st Division)    No. 1—92—4498

Opinion filed May 16, 1994.

Terrence Michael Jordan, of Chicago, for appellant.

James K. Maremont & Associates, of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:
The respondent, Haydee Quintero Adan, appeals from an order of

the trial court apportioning marital property consisting of settlement proceeds from a personal injury lawsuit brought by the petitioner, Rosendo Adan. The respondent also appeals from an order denying her motion for a rule to show cause why the petitioner should not be held in contempt of court for violating a court order enjoining him from dissipating any portion of the settlement proceeds.

The parties were married on August 23, 1980, and separated less than five years later on May 3, 1985. After the separation, on October 11, 1985, the petitioner was injured at work. He subsequently filed a petition for dissolution of marriage.

On June 4, 1990, the court entered an agreed judgment dissolving the marriage and apportioning the marital property, which consisted primarily of a $170,000 workers' compensation award. Pursuant to the agreement, the respondent received $30,404.26 as her portion of the marital proceeds, and the petitioner received the remaining $96,407.74 of the net workers' compensation award. Significantly, the court provided in its order that it would reserve judgment as to the apportionment of any proceeds the petitioner might receive from a pending lawsuit involving his work-related injury. The relevant portion of the order provided as follows:

> "[A]ny proceeds that the [petitioner] might receive from a lawsuit *** filed on behalf of [petitioner] as a result of injuries received by [petitioner] due to an incident occurring on October 11, 1985 constitutes marital property. If monies are received from this case by reason of settlement or a judgment entered against any party, the [petitioner's] attorney shall deposit all net proceeds (gross proceeds minus attorney's fees, costs, medical liens, workmen's compensation liens or trial preparation expenses) in an account *** in the name of [petitioner], and subject to further order of Court. No funds shall be withdrawn from this account by any person pending a determination by a Judge *** as to what amount of said funds, if any, should be paid to [respondent] as marital property."

On April 15, 1992, the petitioner filed an amended motion for an order distributing marital property consisting of settlement proceeds from the lawsuit. The motion alleged that, as a result of the settlement, he received $84,686.15 in cash, which was deposited into his savings account, and an annuity which would provide him with $1,200 per month, for a period of life with a minimum guarantee of 10 years. The petitioner requested that he be awarded the entire amount of the settlement proceeds because the injury left him permanently disabled, he was supporting his 16-year-old son from a previous marriage, and the respondent was employed and able to

support herself. In her response to the motion, the respondent alleged that "the Petitioner has received a settlement agreement in the amount of $416,654.00 from which the sum of $140,313.85 was deducted as attorneys' fees and costs, the sum of $84,686.15 was used for an up-front cash payment and the balance was used to purchase a $1,200.00 per month annuity for a period of not less than ten (10) years." She further alleged that her employment income of $160 per week was insufficient to support her and that the petitioner was receiving social security benefits for his son because the child's mother was deceased. Both parties filed briefs detailing their respective financial circumstances.

The respondent also filed a petition for a rule to show cause why the petitioner should not be held in contempt of court for failing to obey the court order requiring him to deposit all proceeds from the lawsuit. The respondent alleged that the purchase of an annuity constituted a violation of the court order and had the effect of reducing the liquid cash value of the marital estate from $416,654 to $84,686.15.

A hearing was held on October 28, 1992, at which the court determined that the respondent would receive 20% of the deposits and interest on deposit in the petitioner's account and that the petitioner would receive the balance of the funds on deposit and all future annuity payments. At the time of the hearing, some of the monthly annuity payments had already been deposited into the account and the funds on deposit totaled $90,715.75. The respondent argued that part of the personal injury proceeds was funneled into the annuity to reduce the amount of liquid funds and that "the annuity is not at all considered by the Court." The court responded that the respondent was being awarded 20% of the funds on deposit, including any annuity payments that had been deposited into the account, but that all future annuity payments were being awarded to the petitioner. In making this determination, the court noted that the marriage was of short duration and that the petitioner was permanently disabled by his injury and could no longer work. The court also entered an order on that same day, October 8, 1992, denying the respondent's motion for a rule to show cause.

The respondent thereafter filed a motion for reconsideration. At a hearing on the motion, the respondent argued that the court erred in not considering the annuity, which she again asserted was purchased in violation of the court order. She also stated that the apportionment of the settlement proceeds resulted in her receiving only "6.7% of the total marital asset[s]." The petitioner noted that the respondent received $30,404 from the workers' compensation

award and $18,552 from the personal injury settlement for a total of $48,956. He argued that this was a sufficient award, given the fact that the parties separated less than five years after they were married and that they were already separated at the time the petitioner was injured. In denying the respondent's motion for reconsideration, the court stated, "I don't know about the Six point seven (6.7) per cent, but the Court considered all of the facts and applied those facts to the complete hearing in this matter."

The respondent first contends that the trial court abused its discretion in apportioning the proceeds of the personal injury settlement. Specifically, she argues that the court's order resulted in her being awarded only 12% of the total marital assets. She maintains that the inequitable distribution emanated from the court's refusal to consider the relevant statutory factors, its failure to consider the funds used to purchase the annuity as marital assets and its inability to understand the issues presented to it for determination.

According to section 503 of the Illinois Marriage and Dissolution of Marriage Act, the trial court must divide the marital property in "just proportions" after considering "all relevant factors." (Ill. Rev. Stat. 1991, ch. 40, par. 503(d) (now 750 ILCS 5/503(d) (West 1992)); *In re Marriage of Drone* (1991), 217 Ill. App. 3d 758, 765, 577 N.E.2d 926, 931.) The relevant factors include "the contribution of the parties to the marital property; the value of the property set apart for each spouse; the duration of the marriage; the relevant economic circumstances of each spouse upon distribution of the property; the obligations and rights arising from a prior marriage; the age, health, station, occupation, amount and sources of income, vocational skills, and employability of the parties; whether the apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse to acquire capital assets and income in the future." *Drone*, 217 Ill. App. 3d at 765-66, 577 N.E.2d at 931.

The division of marital property in "just proportions" does not necessitate mathematical equality; an unequal division may be made where the court has properly applied the statute. (*In re Marriage of Emery* (1989), 179 Ill. App. 3d 744, 748, 534 N.E.2d 1014, 1016.) The trial court has broad discretion in determining an equitable apportionment of marital property, and an abuse of discretion will be found only when no reasonable person could take the view adopted by the trial court. *In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 911, 601 N.E.2d 298, 301.

In the case at bar, the original order of dissolution apportioned the marital property, which consisted mainly of a workers' compensa-

tion award, in the manner agreed upon by the parties. The court reserved judgment on the unliquidated personal injury claim. After the claim was settled, the petitioner informed the court that as a result of the settlement, he received approximately $85,000 in cash and an annuity which would provide him with $1,200 per month for a period of life with a minimum guarantee of 10 years. At the time of the hearing on the petitioner's motion to distribute the proceeds as marital assets, some of the monthly annuity payments had already been deposited into the account, and the funds on deposit totaled $90,715.75. The court, relying upon the short duration of the marriage and the petitioner's permanent disability, awarded the respondent 20% of the funds on deposit and awarded the petitioner the remaining funds as well as all future annuity payments. There is nothing in the record to support the respondent's claims on appeal that the court did not consider the money used to purchase the annuity as a marital asset or that the court did not understand the issues before it. The court was fully informed as to the nature of the settlement proceeds and concluded that 20% of the funds on deposit constituted a just award to the respondent. Considering the circumstances of this case, we cannot conclude that no reasonable person could have taken the view adopted by the trial court. We, therefore, find no abuse of discretion.

■ The respondent next contends that the trial court erred in refusing to hold the petitioner in contempt of court for purchasing an annuity with a portion of the settlement proceeds.

"Whether and on what grounds a party is guilty of contempt and the decision whether or not to punish a contemnor rests within the sound discretion of the circuit court ***." (*In re Marriage of Hartian* (1991), 222 Ill. App. 3d 566, 570, 584 N.E.2d 245, 248.) Here, the court was fully apprised by the petitioner that he purchased an annuity with part of the settlement proceeds. The court awarded the respondent 20% of the funds remaining on deposit after the purchase of the annuity, and determined that all future annuity payments would be awarded to the petitioner. The court may have concluded either that the petitioner's handling of the settlement proceeds did not constitute a violation of the order or that, even if it did, a contempt citation was simply not warranted under the circumstances. We will not disturb the trial court's exercise of discretion in this regard.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.