*In re* MARRIAGE OF LORETTA M. ODEN, Petitioner-Appellee, and EDWARD R. ODEN, Respondent-Appellant.

Fourth District No. 4—08—0687

Opinion filed September 21, 2009.

Richard D. Frazier and Diana N. Cherry, both of Metnick, Cherry, Frazier & Sabin, LLP, of Springfield, for appellant.

Robert V. Bonjean, Jr., of Bonjean Law Office, of Jacksonville, for appellee.

JUSTICE POPE delivered the opinion of the court:

In September 2006, petitioner, Loretta M. Oden, petitioned for dissolution of her marriage to respondent, Edward R. Oden. In August 2008, the trial court entered a judgment dissolving the marriage, addressing issues of property distribution and maintenance. Edward appeals, arguing the court erred in awarding him only 54% of the Salin Bank account, which contained the proceeds from a settlement for personal injuries suffered by Edward in 1988.

## I. BACKGROUND

At the time of filing of the petition for dissolution, Loretta was 47 years old and Edward was 52 years old. The parties had been married for nearly 30 years, having married on November 6, 1976. Three

children were born to the parties, all of whom were adults at the time of filing.

Edward and Loretta acquired 360 acres of tillable farmland between 1980 and 1997. For almost 20 years, from 1987 until the parties separated in March 2006, Edward and Loretta farmed this ground and approximately 45 acres they rented. In addition, both Edward and Loretta worked in their house-moving business, Greene County Steel Sales, from 1987 until 2005. Loretta is currently employed by West-Central Mass Transit, earning approximately $30,000 per year. Edward receives an annual income of $23,022 from social security disability payments and a disability pension through the ironworkers' union.

From 1976 until 1988, Edward was employed as an ironworker. In 1988, he suffered an electric shock on the job and fell, suffering serious injuries. He received a workers' compensation award, which was expended by the parties during the marriage. In 1994, in settlement of a separate personal-injury action resulting from the electric shock, a check in the amount of $489,273.85, made payable to Edward and Loretta, was deposited in a Salin Bank joint account. At the time of trial, the Salin Bank account contained $589,273.85. By mutual agreement, beginning in 2002 or 2003, Edward began to draw $3,000 per month from the Salin Bank account to use for living expenses.

The parties entered into a joint evidentiary stipulation (stipulation) filed April 23, 2008, which dealt with (1) the valuation of property owned by the parties and (2) the distribution of some of the property. The trial court heard evidence and issued its ruling on August 6, 2008. This ruling adopted the parties' joint stipulation, dealt with issues of dissipation, and provided for the distribution of property not covered by the stipulation. Maintenance was not awarded to either party. A formal judgment of dissolution, which incorporated the stipulation, and the court's August 6, 2008, order (with some clarifications not relevant here) were entered on August 19, 2008. On September 17, 2008, Edward filed a notice of appeal. The only issue presented for review is the court's decision concerning the division of the Salin account, which held proceeds from Edward's personal-injury settlement.

## II. ANALYSIS

Because the only issue on appeal is the division of marital property, we review the trial court's decision under the abuse-of-discretion standard. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 699-700, 843 N.E.2d 478, 482 (2006). In its August 6, 2008, order, the court, after reviewing the evidence, stated "[Edward] should be awarded an increased share of [the Salin] account. This amount is determined to be $50,000.00."

In an exhibit attached to the August 6 order, the trial court set forth the property distribution of the entire marital estate. Edward received $344,636.93 from the Salin account while Loretta received $244,636.83. While at first blush it appears Edward received $100,000 more than Loretta from the Salin account, Edward's brief indicates the Salin account was used to offset other distributions, and after those offsets, Edward received an extra approximately $50,000 from the account. Loretta's brief does not dispute this, and this court finds, for purposes of this opinion, Edward received approximately $50,000 more than Loretta from the Salin account.

Turning to the evidence, the parties had a sizeable estate, approximately $1.5 to $1.7 million (excluding the Salin account), which they agreed to divide 50-50. These assets included farmland, other real estate, farm equipment and machinery, Green County Steel Sales equipment, vehicles, investment accounts, certificates of deposit, individual retirement accounts, bank accounts, and cash-value life insurance.

In 1988, Edward was severely injured when he suffered an electric shock and fell. His spleen ruptured and was removed, as was his gallbladder. His right hand was amputated, and he required skin grafts in his legs and hands. He suffered broken ribs and a broken hip socket. He was hospitalized for six weeks.

Loretta stayed at the hospital 24 hours per day for the first week, came to the hospital daily for the next 5 weeks, and cared for Edward at home as he recovered over the next year. Following his recovery period, Edward returned to farming alongside Loretta and to working again at Greene County Steel Sales, moving and elevating homes. He did not return to employment as an ironworker.

Approximately one year after the accident, Edward began to suffer seizures and, despite medication, continues to suffer seizures from time to time. Following his injuries, he engaged in fits of anger and entertained suicidal thoughts. He takes several medications for his depression and has been hospitalized at least three times due to his mental-health issues.

Approximately five years following the accident, Edward and Loretta received a personal-injury settlement totaling $489,273.85. At the time of the dissolution, the trial court valued this account at $589,273.85 (court's exhibit B) (although the stipulation provided the Salin account balance was $550,000 as of March 31, 2008). Two hundred thousand dollars had been drawn from this account to build the marital residence. In addition, beginning in 2002 or 2003, Edward began to draw $3,000 per month for living expenses from this account.

Loretta requested an equal distribution of the funds in the Salin account. She pointed out the injury occurred 20 years prior to the dissolution, and the settlement was received 15 years prior thereto. The funds were paid jointly to the parties, held in a joint account, and expended by agreement for the marital residence and living expenses. Loretta testified the settlement check was made out to the parties jointly because "marri[ed] life would be different [after the accident] and due to anguish on her part." Apparently, no written allocation to a loss-of-consortium claim was ever made. She argued (1) this was a 30-year marriage; (2) she cared for Edward after his injuries; (3) she worked side by side with him in the farming and house-moving business; and (4) she lived frugally during the marriage, resulting in the preservation and growth of the marital estate. Edward's physical condition is stable, and he should not require future surgeries due to his 1988 accident. Despite his disability, he was able to return to vigorous employment as a farmer and house mover.

Edward agrees the Salin account is marital property. He argued for a disproportionate distribution on the basis that his injuries resulted in the settlement and his health has been impacted adversely by the accident. He relies on *In re Marriage of DeRossett*, 173 Ill. 2d 416, 671 N.E.2d 654 (1996), *In re Marriage of Adan*, 263 Ill. App. 3d 566, 635 N.E.2d 778 (1994), and *In re Marriage of Murphy*, 259 Ill. App. 3d 336, 631 N.E.2d 893 (1994).

In *DeRossett*, the supreme court affirmed an award of 30% of a workers' compensation settlement to the noninjured spouse. *DeRossett*, 173 Ill. 2d at 422-23, 671 N.E.2d at 657. There, the parties married in 1987, the injury occurred in 1990, and the dissolution was filed in 1994, while the workers' compensation claim was still pending. *DeRossett*, 173 Ill. 2d at 417-18, 671 N.E.2d at 655. The court found the workers' compensation award to be marital property and further found the trial court did not abuse its discretion in awarding 30% of the award to the noninjured spouse. *DeRossett*, 173 Ill. 2d at 422, 671 N.E.2d at 657.

In *Adan*, the parties separated less than five years after they married. *Adan*, 263 Ill. App. 3d at 567, 635 N.E.2d at 778. After the separation, the husband was injured at work. *Adan*, 263 Ill. App. 3d at 567, 635 N.E.2d at 778. The parties agreed the wife would receive 18% of the workers' compensation award. *Adan*, 263 Ill. App. 3d at 567, 635 N.E.2d at 778. The appellate court reserved ruling on the apportionment of any personal-injury settlement until it was received. *Adan*, 263 Ill. App. 3d at 567, 635 N.E.2d at 778. The court awarded 20% of the cash settlement and none of the annuity portions of the settlement, due to the short duration of the marriage and the permanent

disability of the husband, which prevented him from working. *Adan*, 263 Ill. App. 3d at 570, 635 N.E.2d at 780. This decision was affirmed on appeal. *Adan*, 263 Ill. App. 3d at 570, 635 N.E.2d at 781.

Lastly, in *Murphy*, the parties received a lump-sum payment of $800,000 and an annuity payment of $90,000 for at least 20 years for injuries the husband suffered at work in 1985. *Murphy*, 259 Ill. App. 3d at 337, 631 N.E.2d at 894. The husband was paralyzed from the chest down but was able to work. *Murphy*, 259 Ill. App. 3d at 342, 631 N.E.2d at 897. In 1990, the wife filed for dissolution of their 10-year marriage. *Murphy*, 259 Ill. App. 3d at 337, 343, 631 N.E.2d at 894, 898. The wife did not receive any of the annuity payments, save one, which was included in the $220,000 awarded to her. *Murphy*, 259 Ill. App. 3d at 337-38, 631 N.E.2d at 894. We affirmed, finding the trial court did not abuse its discretion in dividing the property. *Murphy*, 259 Ill. App. 3d at 344, 631 N.E.2d at 898.

Loretta relies on *In re Marriage of Burt*, 144 Ill. App. 3d 177, 494 N.E.2d 868 (1986), and *In re Marriage of Hall*, 278 Ill. App. 3d 782, 663 N.E.2d 430 (1996), both of which awarded 50% of settlement proceeds to the noninjured spouse, and she distinguishes the cases Edward relies on from the facts of the case *sub judice*.

In *Burt*, the husband was seriously injured in an automobile accident, which occurred during the pendency of the dissolution. *Burt*, 144 Ill. App. 3d at 178, 494 N.E.2d at 868. This court affirmed the award of a 50% interest in the present value of the annuity portion of the structured settlement and 50% of the cash balance of the settlement to the noninjured spouse. *Burt*, 144 Ill. App. 3d at 183, 494 N.E.2d at 872.

In *Hall*, the parties married December 15, 1991. *Hall*, 278 Ill. App. 3d at 783, 663 N.E.2d at 430. In February 1993, the husband was injured in a work-related accident. *Hall*, 278 Ill. App. 3d at 783, 663 N.E.2d at 430. His workers' compensation claim was still pending when the marriage was dissolved in September 1994. *Hall*, 278 Ill. App. 3d at 783, 663 N.E.2d at 430. Having reserved classification and allocation of the claim, the trial court awarded 50% of the settlement to the noninjured spouse. *Hall*, 278 Ill. App. 3d at 783, 663 N.E.2d at 430-31. In affirming, the Third District found the trial court had considered the relevant factors under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503(d) (West 1994)) and did not abuse its discretion. *Hall*, 278 Ill. App. 3d at 785, 663 N.E.2d at 432.

In the case *sub judice*, the trial court discussed the factors favoring an increased award to Edward. Those included his increased medi-

cal needs as he grew older and the fact the funds in the Salin account resulted from injuries he sustained. The court specifically found Edward did not provide an accurate assessment of his future needs in the types of services he might need or the cost of any such services.

In discussing the factors favoring an equal distribution of the Salin account, the trial court noted Loretta's extensive efforts in the parties' business interests, her care of Edward during his recovery and subsequent years, and the relative size of the distribution each party would receive.

In the cases Edward relies on, the parties' marriages were of relatively short duration, the injuries occurred near the end of the marriage, and the actual settlements were paid out either while the dissolution was pending or subsequent thereto. Regarding the cases Loretta relies on, *Burt* and *Hall*, Edward points out the marital estates, exclusive of the settlement proceeds, were relatively insignificant. As Edward notes, the parties in the case *sub judice* have significant marital assets separate and apart from the Salin account. However, the trial court considered the relative size of the distribution each party would receive in making its determination.

A court is required to divide marital property "in just proportions" considering all relevant factors, including (1) the contribution of each party to the acquisition and preservation of marital property; (2) dissipation; (3) the value of property assigned to each party; (4) the duration of the marriage; (5) the age, health, vocational skills, and employability of each party; and (6) whether maintenance is awarded. 750 ILCS 5/503(d) (West 2006). In determining whether the trial court abused its discretion in dividing marital property, this court will not substitute its judgment for that of the trial court unless no reasonable person would adopt the position of the trial court. *Murphy*, 259 Ill. App. 3d at 342, 631 N.E.2d at 897.

Here, the parties had been married nearly 30 years at the time the petition for dissolution was filed. Edward's injury occurred in 1988, and the parties remained married for 20 years following his injuries. The settlement was paid jointly to the parties 15 years prior to the dissolution. During the years following the accident, Loretta and Edward worked side by side, chose a frugal lifestyle, and enhanced and preserved their marital estate, including the injury settlement. The trial court had no evidence of Edward's future medical needs or the likely cost thereof. Thus, we find no abuse in the court's award of the additional $50,000 to Edward from the Salin account. Accordingly, we affirm the trial court's distribution of property.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and TURNER, JJ., concur.